49 P.3d 1221 (2002)
The PEOPLE of the State of Colorado, Petitioner-Appellee, In the Interest of E.S., a Child,
and Concerning S.S.K., Respondent-Appellant, and
D.K., Special Respondent-Appellant.
No. 01CA0334.
Colorado Court of Appeals, Div. II.
May 9, 2002.
*1222 James D. Robinson, County Attorney, Rebecca Wiggins, Assistant County Attorney, Denver, Colorado, for Petitioner-Appellee.
Shari Shink, Guardian Ad Litem.
Jeffrey C. Koy, Guardian Ad Litem.
Ledbetter & Associates, P.C., H.J. Ledbetter, Jr., Englewood, Colorado, for Respondent-Appellant.
Lloyd L. Boyer, P.C., Lloyd L. Boyer, Englewood, Colorado, for Special Respondent-Appellant.
Opinion by Judge JONES.
S.S.K. (mother) and D.K. (stepfather) appeal from a judgment entered upon a jury verdict adjudicating the child, E.S., dependent or neglected. We affirm.
Two weeks after the mother and the stepfather were married, the six-year-old child and the stepfather, a truck driver, went on a twenty-six-day road trip. Upon their return, the child complained of being spanked frequently and had a faded bruise the size of a quarter on her upper thigh, which allegedly had been caused by a belt buckle while she was being spanked. Concerns about the spankings and the stepfather's treatment of the child led to the removal of the child from the home and the filing of a petition in dependency or neglect.
The petition initially named the mother and the stepfather as respondents. Shortly after it was filed, the child's natural father was located. Accordingly, the Department of Human Services filed a motion to amend the petition to name the father as a respondent and the stepfather as a special respondent, which was granted by a magistrate. Thereafter, the stepfather's requests to be reinstated as a respondent were denied by the trial court.
The adjudicatory trial was to a jury. Because the stepfather was not a respondent, he was not allowed to present evidence or to cross-examine witnesses. The mother, however, called the stepfather as a witness and presented a vigorous defense to the allegations of abuse. The jury returned three of four special verdicts against the mother, finding as grounds for dependency and neglect, under § 19-3-102(1), C.R.S.2001, that she had mistreated or abused the child or tolerated or allowed another to mistreat the child without taking lawful means to stop or prevent the mistreatment or abuse; that the child's environment was injurious to her welfare; and that the child was lacking proper parental care as a result of the mother's acts or failure to act. Judgment was entered on the special verdicts, and this appeal followed.
As an initial matter, we note that the mother does not have standing to raise issues regarding the stepfather's party status and that the stepfather lacks standing to raise issues concerning the adjudication of the child vis-a-vis the mother. See People in Interest of A.L.B., 994 P.2d 476 (Colo.App. *1223 1999). Thus, the contentions raised by the parties' joint brief will be addressed only as to the specific party having proper standing.

I.
The stepfather contends that the trial court erred in refusing to allow him to participate as a party in the adjudicatory trial. We find no error.

A.
The stepfather argues that a stepparent has a fundamental liberty interest in the care, custody, and management of the stepchild and, therefore, is entitled to constitutional due process protections, including the right to be heard and to defend against a petition in dependency and neglect. We disagree.
A natural or adoptive parent has a fundamental liberty interest in the care, custody, and management of the child. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); B.B. v. People, 785 P.2d 132 (Colo.1990); People in Interest of A.M.D., 648 P.2d 625 (Colo.1982). However, we have found no authority extending a similar liberty interest to either a stepparent or a family unit created by the natural or adoptive parent and a stepparent, absent substantial evidence that the stepparent stood "in loco parentis" to the child. See, e.g., Ortiz v. Burgos, 807 F.2d 6 (1st Cir.1986); In re Maricopa County Juvenile Action, 134 Ariz. 407, 656 P.2d 1268 (Ariz.Ct.App.1982); In re Tracy M., 137 N.H. 119, 624 A.2d 963 (1993); Gribble v. Gribble, 583 P.2d 64 (Utah 1978). But see In re Marriage of Smith, 7 P.3d 1012 (Colo.App.1999); People in Interest of P.D., 41 Colo.App. 109, 580 P.2d 836 (1978).
Further, to extend such an interest where, as here, the rights of both of the natural parents are intact could create an untenable conflict by pitting the rights of a stepparent against those of the natural or adoptive parents, which would compromise the welfare of the child. In re Maricopa County Juvenile Action, supra; see Smith v. Organization of Foster Families for Equality & Reform, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977); People in Interest of A.W.R., 17 P.3d 192 (Colo.App.2000); see also Petition of E.R.S., 779 P.2d 844 (Colo.1989). But see In re Custody of C.C.R.S., 892 P.2d 246 (Colo. 1995)(where natural mother voluntarily relinquished custody of child one day after birth, nonparents granted standing to petition for custody).
Here, the stepfather and the mother had been married only six weeks before the child was removed from the home and the petition in dependency or neglect was filed. Further, the rights of the natural father were extant. Under these circumstances, we decline to extend the constitutional due process protections afforded a natural or adoptive parent to any relationship the stepfather may have had with the child.
Accordingly, the trial court did not err in restricting the stepfather's participation in the adjudicatory trial. Because, as discussed below, the stepfather was allowed to participate in the dispositional stage of the proceedings, we do not address a stepparent's due process rights, if any, at that stage.

B.
The stepfather also argues that, under the Children's Code, a stepparent must be named a respondent and be allowed to participate as a party in a dependency or neglect proceeding. He further argues that the People were bound by stipulation to allow his full participation in the adjudicatory trial. Again, we disagree.
Section 19-3-502(5), C.R.S.2001, provides that "[a]ny parent, guardian, or legal custodian alleged to have abused or neglected a child shall be named a respondent" in a dependency or neglect proceeding. It further provides that the county attorney, the city attorney of a city and county, or the special county attorney may name a stepparent as a respondent if that legal officer determines that it is in the best interest of the child.
In construing a statute, the word "shall" is given a mandatory connotation. See People in Interest of T.L.D., 809 P.2d 1120 (Colo. App.1991). Thus, contrary to the stepfather's assertion, a stepparent is not required to be named a respondent in a dependency or *1224 neglect proceeding. See § 19-3-502(5), C.R.S.2001. Rather, the county attorney is vested with discretion in deciding whether it is in the best interests of the child to name a stepparent as a respondent.
Under the circumstances here, we perceive no abuse of that discretion. The mother and the stepfather were acquainted for only two and one half months before they were married. The stepfather's relationship with the child arose from his marriage to the child's mother only six weeks before the dependency or neglect proceeding was filed. Therefore, whatever legally protected interest the stepfather or the child may have had in their relationship, if any, was limited. Further, because the allegations of abuse by the stepfather formed the basis of the petition in dependency or neglect, they were fully litigated by the mother without the stepfather's full participation. Thus, under the circumstances here, the child's interests would not have been better served by allowing the stepfather to participate as a party.
Further, as a special respondent, the stepfather was allowed to participate as a party during the dispositional stage of the proceeding. Thus, he was able to contest any protective orders or treatment plan provisions that directly affected him as provided by § 19-3-502(6), C.R.S.2001.
Thus, the trial court did not err in limiting the stepfather's participation in the adjudicatory hearing.

II.
The mother contends that the trial court violated her right to due process and abused its discretion in refusing to allow her expert witness to interview the child. She argues that the refusal was based on an erroneous finding that the interview would be traumatic to the child and that it denied her a meaningful opportunity to be heard. We find no error.
Due process requires that a parent be given notice of the termination proceeding, a meaningful opportunity to be heard and to defend, advice of counsel, and, if indigent, a court-appointed expert witness. Sections 19-1-105(2), 19-3-202(1), 19-3-602(2), 19-3-607(1), C.R.S.2001; People in Interest of A.E., 914 P.2d 534 (Colo.App.1996); People in Interest of M.P., 690 P.2d 1300 (Colo.App. 1984). However, a parent's right to due process is subject to the power of the state to act in the best interests of the child. Section 19-3-604(3), C.R.S.2001; People in Interest of M.H., 855 P.2d 15 (Colo.App.1992). Thus, the statutory right to an expert witness may be limited in scope if necessary because of the physical, mental, or emotional needs of the child. People in Interest of M.H., supra. The extent of any such limitation is within the discretion of the trial court. People in Interest of T.R.W., 759 P.2d 768 (Colo.App. 1988).
Here, several experts interviewed the child about her allegations of abuse. The interviews were either videotaped, audiotaped, or transcribed, and they were provided to the mother's expert witness for review. Despite having access to the interviews, the mother requested that her expert witness be allowed to interview the child to determine the veracity and dependability of the child's statements. The guardian ad litem objected to the mother's request, stating that the child's therapist believed it would be detrimental to the child. Relying on the guardian's statement, the trial court denied the mother's request for an interview; however, it granted leave to raise the issue during the next scheduled hearing.
One week later, during the hearing to determine the admissibility of the child's out-of-court statements under § 13-25-129, C.R.S. 2001, the child's therapist testified that the trauma of testifying in open court could be minimized by implementing certain safeguards and that the child would not be unduly traumatized by an interview with the mother's expert if issues concerning the abuse were delicately handled. Nevertheless, the therapist believed that an interview would be futile in light of the consistency of the child's statements, which had been made to several people over the course of three months.
At the close of the hearing, the mother renewed her request for an interview on the grounds that it would not be traumatic to the child. The trial court acknowledged the testimony *1225 of the child's therapist, but found that an additional interview would, in fact, be harmful to the child because of her age and her need for ongoing therapy. The trial court further found that an interview was not likely to result in any new information and that the mother could develop her case through cross-examination of the witnesses to whom the statements had been made. Accordingly, the trial court again denied the request for an interview.
During the termination hearing, the mother's counsel fully and effectively cross-examined the witnesses called to testify to the child's statements. In addition, the mother's expert witness, who had reviewed the interviews of the child and had listened to the child's testimony before being called to the witness stand, testified as to his opinion of the consistency and truthfulness of the child's allegations, and he underwent stiff cross examination concerning those opinions.
Under these circumstances, we conclude that the mother was afforded a meaningful opportunity to develop her case without having interviewed the child. See People in Interest of M.P., supra. Thus, we do not perceive either a violation of the mother's right to due process or an abuse of discretion in the trial court's denial of her request for an interview with the child. See People in Interest of M.H., supra; People in Interest of T.R.W., supra.

III.
The mother also contends that the trial court erred in rejecting her proposed jury instruction on the issue of corporal punishment. Again, we find no error.
The record does not include a copy of the mother's proposed jury instruction. Furthermore, the instructions submitted to the jury accurately set forth the law concerning corporal punishment. See CJI-Civ. 4th 41:6 (Cum.Supp.1998); People in Interest of M.A.L., 37 Colo.App. 307, 592 P.2d 415 (1976). Thus, the record fails to disclose any error, and we must presume that the trial court properly rejected the mother's tendered instruction. See Schuster v. Zwicker, 659 P.2d 687 (Colo.1983).

IV.
Finally, the mother contends that the evidence was insufficient to support the jury's special verdicts upon which the trial court adjudicated the child dependent or neglected. The mother argues that the bruise was de minimis, that it could have been caused when the child fell out of a bunk, and that she did not abuse or neglect the child. We disagree.
A child is dependent or neglected if a parent has allowed another to mistreat or abuse the child without taking lawful means to stop the mistreatment or abuse, if the child lacks proper parental care through the acts or omissions of the parent, or if the child's environment is injurious to his or her welfare. Section 19-3-102(1)(a)-(c), C.R.S. 2001.
As relevant here, § 19-1-103(1)(a)(I), C.R.S.2001, defines "abuse" or "child abuse or neglect" as "[a]ny case in which a child exhibits evidence of skin bruising" and either (1) the bruising is not justifiably explained, (2) the history given concerning the bruising is at variance with the degree of the bruising, or (3) the circumstances indicate that the bruising may not be the result of an accidental occurrence. If a child sustains a nonaccidental injury as a result of corporal punishment, the reasonableness of that punishment is a question for the trier of fact. People in Interest of M.A.L., supra.
In reviewing a challenge to the sufficiency of the evidence, appellate courts are bound by a jury's findings and may not disturb a jury verdict unless it is clearly erroneous. Ajay Sports, Inc. v. Casazza, 1 P.3d 267 (Colo.App.2000). It is the jury's province alone to determine the credibility of the witnesses and the weight of the evidence, as well as the inferences to be drawn from it. Thus, a jury verdict will not be disturbed on review if the record supports it. Ajay Sports, Inc. v. Casazza, supra.
Here, the evidence showed that the mother allowed the six-year-old child to go on a twenty-six-day road trip with the stepfather, whom she had known for only a short time. During the trip, the child received several *1226 spankings, delivered with either a belt or a cutting board. The successive spankings became increasingly severe. Before spanking the child, the stepfather conferred with the mother over the telephone. Further, the child was spanked in the home, before and after the trip, with the mother's approval.
The child testified that she received a quarter-sized bruise from a spanking during the trip with the stepfather. Although the mother's evidence suggested that the bruise may have been caused by a fall from a bunk in the semi-trailer and that the spankings were not abusive, the jury was free to determine the weight of the evidence and the credibility of the witnesses in the manner it deemed appropriate. Likewise, the jury was free to consider the size and extent of the bruising in determining whether the corporal punishment was reasonable. Finally, evidence that the mother allowed the stepfather to spank the child, both at home and while on the trip, is sufficient to support the jury's finding that the child was dependent or neglected under § 19-3-102(1)(a), (b), or (c).
Thus, the jury verdicts, having support in the record, will not be disturbed on appeal. See Ajay Sports, Inc. v. Casazza, supra.
The judgment is affirmed.
Judge PLANK and Judge WEBB concur.