The PEOPLE of the State of Colorado,
Petitioner–Appellee,

v.

In the Interest of T.T. and K.T., a/k/a K.P., Children, and Concerning W.C.P. and C.T., Respondents–Appellants.

No. 05CA0241.

Colorado Court of Appeals,
Div. II.

Dec. 15, 2005.

Certiorari Denied Feb. 6, 2006.

ducted, and while mother's test was negative for controlled substances, the infant's test was positive for amphetamines.

To confirm K.T.'s urinalysis test, the attending physician ordered testing of the baby's meconium, which is a black substance that accumulates in the intestine of a fetus, is eliminated after birth, and provides a history of the substances to which the fetus was exposed during the last twenty weeks of gestation. The hospital also notified the Mesa County Department of Human Services (department) about its concerns, and the department obtained an emergency order placing custody of K.T. with the department. When the results of the test showed highly elevated levels of amphetamines, methamphetamine, and alcohol, a petition in dependency or neglect was filed with respect to both children.

Mother denied ever having used controlled substances, and the parents requested that the adjudication be tried to a jury. After a four-day trial, the jury returned special verdicts finding that K.T. was dependent or neglected under § 19–3–102(1)(a)–(c), C.R.S. 2005, as to both parents, and that T.T. was dependent or neglected under § 19–3–102(1)(c) with respect to mother.

Maurice Lyle Dechant, County Attorney, David Frankel, Assistant County Attorney, Grand Junction, Colorado, for Petitioner–Appellee.

Rennard E. Hailey, Arthur S. O'Farrell, Grand Junction, Colorado, for Respondents–Appellants.

ROTHENBERG, J.

C.T. (mother) appeals from a judgment entered upon a jury verdict adjudicating her children, T.T. and K.T., dependent or neglected. W.C.P. (father) appeals from the judgment adjudicating his child, K.T., dependent or neglected. We affirm.

During the delivery of K.T., concerns arose about mother's use of drugs because of her uncooperative and combative behavior. Urinalysis tests of mother and K.T. were con-

I.

■ Mother first contends the trial court lacked subject matter jurisdiction over the dependency and neglect proceeding because K.T. had not been born when the alleged abuse or neglect took place. Relying on *People in Interest of H.*, 74 P.3d 494 (Colo. App.2003), she maintains that exposure of a fetus to controlled substances does not constitute mistreatment or abuse of a "child" and cannot form the basis of a dependency and neglect proceeding. She relies on the fact that when the petition was filed, there was no statutory provision defining a dependent or neglected child as one who tests positive at birth for controlled substances. We disagree.

The petition in this dependency and neglect action was based on § 19–3–102(1)(a)–(c), which defines a dependent or neglected child, as relevant here, as one who has been

subjected to mistreatment or abuse by a parent, one who lacks proper parental care through the actions or omissions of the parent, or one whose environment is injurious to his or her welfare.

In *People in Interest of H., supra,* a division of this court held that a petition in dependency or neglect could not be filed with respect to an unborn child because a fetus is not specifically included in the statutory definition of "child." *See* § 19–1–103(18), C.R.S. 2005. However, *People in Interest of H., supra,* does not preclude the filing of a petition as to a child born with controlled substances in his or her system.

Evidence of a parent's prenatal substance abuse is sufficient to establish there will be mistreatment or abuse if the child is placed with the parent after birth. *See People in Interest of D.L.R.,* 638 P.2d 39 (Colo.1981). Upon the birth of the child, such evidence may also support the filing of a petition in dependency or neglect under § 19–3–102(1)(a)–(c).

Contrary to mother's contention, the amendment of § 19–3–102(1), C.R.S.2005, does not require a different result. The amendment expressly defines a child who "tests positive at birth for either a schedule-I controlled substance . . . or a schedule-II controlled substance" as dependent or neglected. Section 19–3–102(1)(g), C.R.S.2005.

■ The amendment of a statute creates a rebuttable presumption that a change in the law was intended. However, when more specific sections are added to a general statutory provision, the addition may indicate a legislative intent to clarify the existing statute or to resolve an ambiguity in the former law. *Colo. Dep't of Soc. Servs. v. Bethesda Care Ctr., Inc.,* 867 P.2d 4 (Colo.App.1993).

Review of the House and Senate Judiciary Committee hearings addressing the proposed amendment of § 19–3–102(1) reveals that dependency and neglect proceedings were regularly maintained with respect to such children under the then-existing statute. The hearings also reflect that the amendment was not intended to change the law but to expedite dependency and neglect proceedings by encouraging parents of affected children to seek treatment immediately upon the filing of the petition. *See* Hearing on H.B. 05–1141 before the House Judiciary Committee, 65th General Assembly, 1st Session (Feb. 3, 2005); Hearing on H.B. 05–1141 before the Senate Judiciary Committee, 65th General Assembly, 1st Session (Mar. 2, 2005).

■ We thus conclude the amendment to § 19–3–102(1) clarified, but did not change, existing law, which permits a petition in a dependency and neglect action to be based on circumstances such as those before us. Accordingly, we reject mother's contention that the trial court lacked subject matter jurisdiction over the dependency and neglect proceeding because K.T. had not been born when the alleged abuse or neglect took place.

## II.

■ Mother next contends K.T. could not be adjudicated dependent or neglected because mother never had custody of him and there was no evidence she could not provide proper parental care for him. Again, we disagree.

Section 19–3–102(1)(b) has been interpreted to include a child "who lacks or *will lack* proper parental care." *People in Interest of D.L.R., supra,* 638 P.2d at 42 (emphasis added). Thus, a child need not be placed with a parent to determine whether the parent can provide proper care if such placement might prove detrimental to the child. *People in Interest of D.L.R., supra.*

Here, there was expert testimony that the only way K.T. could have had amphetamines, methamphetamine, and alcohol in his system was through prenatal drug and alcohol use by mother. Mother nevertheless denied she had a substance abuse problem and refused to participate in random urinalysis testing to establish her sobriety, which resulted in the suspension of visits with K.T. several months before the adjudicatory trial. She also refused to believe K.T. exhibited symptoms of drug withdrawal after his birth and did not recognize the impact of prenatal substance abuse on him. Hence, returning the child to mother was likely to be detrimental to him.

We therefore reject mother's argument that K.T. could not be adjudicated dependent

or neglected because she never had custody of him and because there was no evidence she could not provide proper parental care for him.

### III.

Both parents contend the evidence was insufficient to support the jury verdicts finding the children dependent or neglected. We disagree.

■ In determining whether a jury verdict is supported by the evidence, the record is viewed in the light most favorable to the prevailing party, and every inference fairly deducible from the evidence is drawn in favor of the judgment. *People in Interest of D.L.R., supra.* Appellate courts are bound by a jury's findings and may not disturb a jury verdict unless it is clearly erroneous. *People in Interest of E.S.,* 49 P.3d 1221 (Colo. App.2002).

### A.

■ Mother argues that because she was providing appropriate care to the older child, T.T., the evidence was insufficient to establish that the children's environment was injurious to their welfare. We disagree.

While a parent's treatment of one child may be considered in determining whether another child is dependent or neglected, *People in Interest of D.L.R., supra,* consideration of the individual needs, strengths, and weaknesses of each child and each parent is also probative. *See People in Interest of L.D.,* 671 P.2d 940 (Colo.1983).

The evidence showed that thirteen-year-old T.T. remained in mother's custody during the pendency of the proceeding with protective supervision by the department. However, T.T. was mature and independent, did not require extensive parental care, and other family members, including her biological father, attended to her needs. Further, the caseworkers had ongoing concerns as to T.T.'s safety and welfare because of mother's refusal to establish her sobriety through random urinalysis testing and to participate in substance abuse treatment. T.T.'s arrest for shoplifting during the pendency of the proceeding also raised concerns about the adequacy of mother's care.

The caseworkers testified that K.T. had neurological problems affecting his muscle tone as a result of prenatal drug exposure and had greater needs than T.T. Because of ongoing concerns about mother's drug use and continuing denial, the caseworkers expressed their opinions that she could not provide proper parental care or a safe environment for K.T.

We thus conclude the record supports the jury verdicts, and they may not be disturbed on review. *See People in Interest of E.S., supra.*

We do not consider mother's assertion that some of the evidence relating to the children's environment was outside the facts alleged in the petition because she failed to raise this contention in the trial court. *See People in Interest of V.W.,* 958 P.2d 1132 (Colo.App.1998).

### B.

■ Father contends the jury verdicts against him cannot stand because there was no evidence that (1) he was responsible for K.T.'s having been born with controlled substances in his system, (2) he had a substance abuse problem, or (3) he was unable to parent K.T. adequately. We disagree.

An order of adjudication is not made as to the parent, but relates only to the status of the child. *People in Interest of C.T.,* 746 P.2d 56 (Colo.App.1987); *People in Interest of P.D.S.,* 669 P.2d 627 (Colo.App.1983).

Although the precipitating reason for intervention here was mother's drug use, the caseworkers also had concerns about father's use of drugs. He denied that mother used drugs, but there was evidence that she did and he and mother lived together during her pregnancy. Further, drug paraphernalia was found in his possession during an unrelated arrest, and he refused to participate in random urinalysis testing.

Based on this evidence, the jury could reasonably conclude that K.T. was subjected to neglect or abuse based on father's acts or omissions, that father could not provide prop-

er parental care, and that K.T.'s environment with father would be injurious to the child's welfare. Accordingly, the jury verdicts against father may not be disturbed on review. *See People in Interest of E.S., supra.*

## IV.

 Father also contends the trial court erred in finding that the treatment plan recommended by the department was appropriate for him. He denies that he has a substance abuse or alcohol problem and asserts that the plan was unreasonable because it (1) required him to participate in random urinalysis testing; (2) conditioned visits with K.T. on father's participation in the urinalysis testing; (3) required that visits be supervised; and (4) required him to participate in a capacity-to-parent evaluation. We disagree.

A treatment plan is appropriate if it "is reasonably calculated to render the particular [parent] fit to provide adequate parenting to the child within a reasonable time" and "relates to the child's needs." Section 19–1–103(10), C.R.S.2005.

The purpose of a treatment plan is to preserve the parent-child relationship by assisting the parent in overcoming the problems that led to the dependency adjudication. Its appropriateness is measured by the likelihood of success in reuniting the family, which must be assessed in light of the facts existing at the time of its approval. *People in Interest of M.M.*, 726 P.2d 1108 (Colo.1986).

The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn from it, are within the discretion of the trial court. A trial court's findings and conclusions will not be disturbed on review if the record supports them. *People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

During the dispositional hearing, the caseworker testified about her concerns that father used drugs and that he had been found with drug paraphernalia in his possession. Thus, it was reasonable to require him to undergo random urinalysis testing to establish whether he was using drugs or alcohol and to assess his need for treatment. Until concerns about his use of substances were resolved, it was also reasonable to condition visitation with K.T. on participation in the urinalysis testing and to require that visits be supervised. The capacity-to-parent evaluation, which included a psychological evaluation, was necessary because of concerns about father's mental health and his lack of child rearing experience.

Accordingly, the evidence supports the trial court's finding that the treatment plan was appropriate. *See People in Interest of C.A.K., supra.*

Judgments affirmed.

DAILEY and LOEB, JJ., concur.