24CA1511 Peo in Interest of OLF 03-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1511
El Paso County District Court No. 24JV30461
Honorable Lin Billings Vela, Judge

The People of the State of Colorado,

Appellee,

In the Interest of O.L.F., a Child,

and Concerning R.M.,

Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Schock and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 20, 2025

Kenneth R. Hodges, County Attorney, Shannon Boydstun, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, R.M. (father) appeals the judgment adjudicating O.L.F. (the child) dependent or neglected following a jury trial.  We affirm.

I.    Background

¶ 2    In 2020, the El Paso County Department of Human Services initiated a dependency and neglect proceeding regarding the then-newborn child based on concerns about the parents' substance abuse and domestic violence.  Two-and-a-half years later, the juvenile court entered an allocation of parental responsibilities (APR) to the child's mother.[1]  At that time, the juvenile court found that father was not fit because he had not complied with his treatment plan.  Thus, the court permitted father to have only professionally supervised parenting time and required him to engage in domestic violence and substance use treatment.  The court also approved a step-up plan that allowed father to work toward unsupervised parenting time by demonstrating ongoing

_____

[1] At trial, the juvenile court admitted the prior APR judgment, marked as People's Exhibit 2, into evidence.  But it is not in the appellate record.  Nonetheless, we take judicial notice of the APR judgment, dated February 21, 2023, from El Paso County District Court Case No. 20JV303.  *See* C.R.E. 201.

sobriety and engaging in substance abuse and domestic violence treatment not completed during the case. The juvenile court certified the APR judgment into a domestic relations case and closed the dependency and neglect case.

¶ 3     A year-and-a-half later, law enforcement received a report that mother was brandishing a weapon and responded to her apartment in the middle of night. When they arrived, the then-four-year-old child was awake, and mother appeared to be under the influence of substances. The front door to the apartment was broken off its hinges, and an unknown male with methamphetamine in his pocket was inside the apartment. Law enforcement found drug paraphernalia near the child's toys; trash scattered throughout the apartment; and numerous unsecured safety hazards including nails, screws, razor blades, a knife, and ripped out electrical outlets.

¶ 4     An intake caseworker responded to mother's apartment. After an initial investigation, the Department determined that it could not place the child with father because the prior APR judgment did not allow him any unsupervised parenting time. The caseworker could not identify any other relatives who were available to take the child,

2

so the Department requested a verbal order to remove the child and place her in foster care. The juvenile court granted the request.

¶ 5 The Department then filed a petition in dependency and neglect alleging concerns about the parents' substance use, domestic violence, mental health, and past involvement with the Department. Father denied the allegations and requested an adjudicatory jury trial. He also chose to represent himself despite the juvenile court's offer to appoint counsel and continue the trial.

¶ 6 After a three-day trial, the jury rendered a verdict finding that (1) the child lacked proper parental care as a result of father's acts or failures to act; (2) the child's environment was injurious to her welfare; and (3) father failed or refused to provide proper or necessary care related to the child's health, guidance, or well-being. Based on the jury's verdict, the court adjudicated the child dependent or neglected. The court later entered a dispositional order adopting a treatment plan for father.

II. Statutory Framework and Standard of Review

¶ 7 The purpose of an adjudicatory jury trial is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence and

whether the status of the child warrants intrusive protective or corrective state intervention into the familial relationship. *People in Interest of G.E.S.*, 2016 COA 183, ¶ 13. A child may be adjudicated dependent or neglected if the government proves that one or more of the conditions set forth in section 19-3-102, C.R.S. 2024, exists. *People in Interest of S.M-L.*, 2016 COA 173, ¶ 25, *aff'd on other grounds sub nom People in Interest of R.S. v. G.S.*, 2018 CO 31. A child is dependent or neglected if, as relevant here, "[t]he child lacks proper parental care through the actions or omissions of the parent, guardian, or legal custodian;" "[t]he child's environment is injurious to his or her welfare;" or "[a] parent, guardian, or legal custodian fails or refuses to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for his or her health, guidance, or well-being." § 19-3-102(1)(b)-(d).

### III.    Prospective Harm

Father contends that the juvenile court erred by focusing "solely on prospective harm" in determining that the child was dependent or neglected. He argues that the "use of prospective harm as a basis for adjudication, as utilized [in this case], is not

fundamentally fair because it is not limited in scope." We discern no error.

¶ 9      We note that father's argument that the juvenile court improperly "focused solely on prospective harm" is unclear — the court was not the fact finder, and it adjudicated the child based on the jury's verdict. Nonetheless, to the extent father argues that the court improperly concluded that an adjudication under section 19-3-102(1) can be based on evidence showing prospective harm, we review his argument de novo. *See People in Interest of E.S.*, 2021 COA 79, ¶ 11 (a determination of the proper legal standard to be applied in a case is reviewed de novo). And we reject the argument because we have repeatedly held that an adjudication can be based on prospective harm. *See e.g. G.E.S.*, ¶ 15; *People in Interest of S.N.*, 2014 COA 116, ¶¶ 15-16; *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009).

¶ 10      More specifically, when, as here, a child is not in a parent's care at the time of removal, the fact finder must determine whether a child is dependent or neglected based on a prediction of the home environment to which the child might be exposed if placed in that parent's care. *See People in Interest of A.W.*, 2015 COA 144M, ¶ 22.

In such an instance, the fact finder's task is to determine whether the child "will lack" proper parental care if returned to the parent or whether the child's environment "will be" injurious to the child in that event. *People in Interest of S.X.M.*, 271 P.3d 1124, 1130 (Colo. App. 2011). Such a determination may be based on the "parent's past conduct and current circumstances." *S.N.*, ¶ 17. Thus, it is not necessary that a child be placed with a parent to determine whether that parent can provide proper care if such a placement might prove detrimental to a child. *S.G.L.*, 214 P.3d at 583.

¶ 11 Based on the foregoing, we discern no error in the juvenile court's determination that the Department could seek adjudication based on prospective harm by presenting evidence related to father's prior dependency and neglect cases. *See A.W.*, ¶ 26. And to the extent father argues that the court failed to limit the scope of such evidence, the record indicates otherwise. Indeed, the court instructed the jury to consider evidence of father's past cases only for the limited purpose of showing whether the child would lack proper parental care or be in an injurious environment if placed with him and not for the purpose of showing that he would act in conformity with his conduct in those cases. *See id.* at ¶ 27.

¶ 12    Father also argues that the Department failed to abide by its own administrative regulations when it removed the child and that we should "find" that compliance with those regulations, in addition to one of the statutory conditions under section 19-3-102(1), is required to adjudicate a child dependent or neglected based on prospective harm.  Although father repeatedly argued to the juvenile court that the Department should have more thoroughly investigated him as a placement option at the time of removal, he never contended that the Department failed to follow its administrative regulations or that it was required to prove such compliance under section 19-3-102(1).  Consequently, the argument is not properly before us.  *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 (we review only issues presented to and ruled on by the lower court).

IV.    Sufficiency of the Evidence

¶ 13    Father contends that the Department failed to present sufficient evidence for the jury to find the child dependent or neglected.  We are not persuaded.

¶ 14    In determining whether the evidence is sufficient to sustain the adjudication, we review the record in the light most favorable to

the prevailing party, and we draw every inference fairly deducible from the evidence in favor of the jury's decision. *See S.G.L.*, 214 P.3d at 583. The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the purview of the jury. *Id.* We are bound by a jury's findings, and we will not reverse those findings if the record supports them, even if reasonable people might arrive at different conclusions based on the same facts. *Id.*; *People in Interest of T.T.*, 128 P.3d 328, 331 (Colo. App. 2005).

¶ 15 Here, relying on the jury's verdict, the juvenile court adjudicated the child dependent or neglected because (1) the child lacked proper parental care based on father's acts or omissions, section 19-3-102(1)(b); (2) the child's environment was injurious to her welfare, section 19-3-102(1)(c); and (3) father failed or refused to provide proper or necessary subsistence, medical care, or any other care necessary to the child's health, guidance or well-being, section 19-3-102(1)(d). The evidence supports the jury's verdict.

¶ 16 The caseworker from father's previous case testified that father did not demonstrate ongoing sobriety or participate in any

8

substance abuse or domestic violence treatment during that two-and-a-half year proceeding.  The caseworker also opined that if father had not done any treatment since the prior case closed, the Department would have the same concerns about father's ability to parent as it did when that case closed.

¶ 17    Next, the current caseworker testified that at the time of removal, the APR judgment from the prior case prevented the Department from placing the child with father because it permitted only supervised parenting time, and the judgment had not been modified.  Although that judgment allowed father to work toward unsupervised parenting time, the court record did not indicate that father had complied with the conditions of the step-up plan.  By the time of the adjudicatory trial, father had not provided the caseworker with any documentation showing that he was sober or that he had participated in substance abuse and domestic violence treatment.

¶ 18    True, father testified that in the year-and-a-half between the two cases, he regularly met with his medication management doctor and maintained stable housing and employment.  But father also admitted that during that same timeframe, he did not do any

substance abuse or domestic violence treatment, nor could he show ongoing sobriety. Moreover, he admitted that the child was in an injurious environment at the time she was removed from mother's care.

¶ 19 Although father argues that the Department presented no evidence showing that he was unable to care for the child or that he was at fault for the lack of care she was receiving while with mother, we disagree. The Department presented evidence showing that the prior APR judgment limited father to supervised parenting time unless he could show ongoing sobriety and engage in treatment. But when the child was removed, he had not shown ongoing sobriety or engaged in treatment. As the Department argued, if father had complied with the requirements of the step-up plan, then he could have been permitted to have unsupervised parenting time, and the Department could have considered placing the child with him when she was removed from mother's care. But, because no evidence indicated that father complied with the requirements of the step-up plan, it was reasonable for the jury to infer that the safety concerns related to father's substance abuse and domestic violence still existed at the time of adjudication, and

thus, that it would likely be unsafe to place the child in his care. *See A.W.*, ¶ 22; *S.G.L.*, 214 P.3d at 583.

¶ 20    Based on the foregoing, when viewed in the light most favorable to the Department and the jury's verdict, the evidence was sufficient to support the jury's findings that the child was dependent or neglected under one or more of the statutory criteria presented.  *See* § 19-3-102(1)(b)-(d); *see also S.M-L.*, ¶ 29 (section 19-3-102 requires proof of only one statutory condition for adjudication).  Accordingly, we are bound by the jury's findings and discern no basis to reverse the judgment.  *See S.G.L.*, 214 P.3d at 583.

## V.    Disposition

¶ 21    The judgment is affirmed.

JUDGE SCHOCK and JUDGE SULLIVAN concur.