24CA1653 Peo in Interest of AR 05-29-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1653
El Paso County District Court No. 23JV30848
Honorable Jayne Candea-Ramsey, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.R., D.C.L, and H.L., Children,

and Concerning K.L.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Lipinsky and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

---

Kenneth R. Hodges, County Attorney, Shannon Boydstun, Assistant County Attorney, Melanie Douglas, Contract Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Counsel for Youth, Superior, Colorado, for A.R.

Debra W. Dodd, Guardian Ad Litem, for D.C.L. and H.L.

Andrew A. Gargano, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     In this dependency or neglect action, K.L. (mother) appeals the judgment entered on a jury's verdict adjudicating A.R., D.C.L., and H.L. (the children) dependent or neglected.  We affirm.

I.     Background

¶ 2     The El Paso Department of Human Services (the Department) received a referral with concerns about mother's "erratic behavior."  At the time, four-year-old H.L. and seven-year-old D.C.L. resided with mother and her husband, Je.L., who was not the legal father of any of the children who are the subject of this case.  Je.L. had two children with a former partner.  Eleven-year-old A.R. resided primarily with mother's previous husband, J.R. (father).  During the Department's assessment, mother represented that she was planning to move to Arizona.  The caseworker informed mother that she had concerns about the children's safety and, if mother chose to relocate with the children, the Department would make a "courtesy report" to the other state.

¶ 3     Approximately three weeks after the initial referral, the Department received additional referrals from (1) H.L.'s applied behavioral analysis (ABA) provider in Colorado, who reported they were unable to reach mother; and (2) a school district in Alabama,

1

which reported mother was trying to enroll her stepchildren (Je.L.'s children) in school. After the caseworker confirmed with mother that she was in Alabama, the Department made a courtesy report to that state's department of human resources (the Alabama department). A few days later, the Alabama department took temporary custody of D.C.L. and H.L. and opened a dependency or neglect case.

¶ 4 The Department, however, did not close its assessment in Colorado because A.R. remained in Colorado with father, and mother frequently traveled back and forth between the two states. Almost two weeks after the Alabama department opened its dependency or neglect case, mother called the police and reported that father had "pulled a gun" during a parenting time exchange at a Colorado police station.

¶ 5 The Department then filed a petition in dependency or neglect for A.R., alleging concerns about mother's mental health and domestic violence between mother and father. The Department also alleged that mother had a prior dependency or neglect case and that mother and her husband were likely to flee Colorado with A.R. The Department later amended its petition to include H.L. and

D.C.L., and the Alabama department transferred its ongoing dependency case to the Colorado court.

¶ 6     Mother requested an adjudicatory jury trial. After a three-day trial, the jury returned special verdicts finding that all three children were dependent or neglected under section 19-3-102(1)(a), (b), and (c), C.R.S. 2024.

## II.    Sufficiency of the Evidence

¶ 7     Mother first contends that the Department failed to meet its burden at the adjudicatory hearing. We construe mother's argument as an assertion that the evidence was insufficient to support the jury's verdict.

### A.    Standard of Review and Applicable Law

¶ 8     In determining whether the evidence is sufficient to sustain an adjudication of dependency or neglect, we review the record in the light most favorable to the prevailing party, and we draw every inference "fairly deducible" from the evidence in favor of the jury's decision. *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009); *see also People in Interest of T.T.*, 128 P.3d 328, 331 (Colo. App. 2005).

¶ 9 We will not reverse the jury's verdict even if reasonable people might arrive at different conclusions based on the same facts. *S.G.L.*, 214 P.3d at 583.

¶ 10 The purpose of an adjudicatory hearing is to determine the child's status as dependent or neglected under section 19-3-102 and whether that status warrants governmental intervention. *People in Interest of N.G.*, 2012 COA 131, ¶ 39; *see also K.D. v. People*, 139 P.3d 695, 699 (Colo. 2006) (noting that the adjudication is not made as to the parents but relates only to the child's status).

¶ 11 As relevant here, a child is dependent or neglected when (1) a parent has subjected them to mistreatment or abuse or has allowed another to mistreat or abuse the child; (2) the child lacks proper parental care through the actions or omissions of the parent; or (3) the child's environment is injurious to their welfare. § 19-3-102(1)(a)-(c). An adjudication may be based on current, past, or prospective harm. *See People in Interest of G.E.S.*, 2016 COA 183, ¶ 15. Section 19-3-102 requires proof of only one condition for an adjudication. *See People in Interest of S.M-L.*, 2016 COA 173, ¶ 29 (a department need only prevail on one adjudicatory element), *aff'd*

*on other grounds sub nom. People in Interest of R.S. v. G.S.*, 2018 CO 31.

¶ 12    An adjudication may not enter without proof, by a preponderance of the evidence, that the child is dependent or neglected. *People in Interest of J.G.*, 2016 CO 39, ¶¶ 15, 53. The preponderance standard allows for some uncertainty in the determination of dispositive facts. *See People in Interest of A.M.D.*, 648 P.2d 625, 634 (Colo. 1982).

¶ 13    The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the purview of the jury. *Id.*

## B.    Analysis

¶ 14    Mother contends that four of the concerns raised by the Department were not individually sufficient to meet the threshold for state intervention into the family. Specifically, mother asserts that none of the following Department-identified issues "constitute[d] a child protection concern": (1) mother's statements that she died and was reborn a prophet and was lucky to be alive; (2) the caseworker's communications with the Alabama department

5

about mother's activity in Alabama; (3) mother's communication with A.R. regarding moving to Alabama; and (4) the incident between mother and father at the police station.

¶ 15     First, as to mother's statements about being reborn as a prophet, she contends that the Department failed to present evidence that these statements were "an actual sign of mental illness constituting a child protection concern." She argues that the Department failed to present the text messages in which she purportedly made these statements to her mother, and that all the witnesses who testified about mother making these statements were biased against her.

¶ 16     Although the jury did not receive the text messages, it heard directly from mother about the events leading up to the filing of the petition. She denied many of the Department's allegations, including the allegation that she sent the caseworker a text message saying mother was a prophet. While mother denied most of the allegations or disputed the Department's and witnesses' versions of events, it was the jury's role as fact finder — and not the role of the juvenile court or this court — to make credibility assessments and weigh the evidence. *S.G.L.*, 214 P.3d at 583. And

the jury was appropriately instructed that, as fact finder, it could believe all, part, or none of the witnesses' testimony — including mother's.

¶ 17     In addition, mother did not extensively cross-examine the witnesses she says were biased against her, despite having the opportunity to do so.  For example, counsel asked the maternal grandmother and a maternal aunt questions about their positions that mother had "betrayed the whole family" by testifying in another maternal aunt's domestic relations case, which they believed resulted in the maternal aunt losing custody of her son.  But mother did not cross-examine the other witnesses who she alleges were biased against her as to why those witnesses were upset with her or motivated to testify against her.

¶ 18     The caseworker also testified that, in the six weeks between the first referral and the filing of the petition, mother's behavior became more erratic and unpredictable around the children.  For example, the caseworker testified that mother told her that she was worried someone was following her and put a tracker in her car, but when the caseworker asked for further details, mother could not provide specifics.  The caseworker explained this was a concern

because she believed this type of erratic behavior could place the children "in harm's way," especially with respect to mother possibly fleeing.

¶ 19 Second, mother challenges certain statements the caseworker made to the Alabama department about the Department's concerns and the status of the Department's case. Specifically, she contends that the caseworker told the Alabama department that (1) mother left the state during the pendency of the Colorado case; (2) Je.L. had not seen the children for over a year; and (3) mother had tested positive for marijuana. But none of these statements was presented to the jury. Despite appearing in the Department's notes and records, those documents were not admitted at trial. And contrary to mother's arguments, the evidence presented to the jury showed that H.L. and D.C.L. came to the Alabama department's attention before the Department made its courtesy report.

¶ 20 Third, mother contends that the evidence regarding her communications with A.R. about Alabama were insufficient to support an adjudication because the Department admitted into evidence only one text message in which she talked about A.R. possibly moving to Alabama, she never took A.R. across state lines,

and her asking A.R. if she wanted to move to be with the family did not warrant the Department's intervention. The caseworker acknowledged that only one text message had been entered into evidence, but the caseworker also testified that A.R. showed her other text messages in which A.R. felt pressured by mother because mother repeatedly asked her whether she wanted to move to Alabama. The caseworker further testified that she was not in possession of the other text messages A.R. showed her because A.R. had not sent them to the caseworker. Finally, the caseworker testified that, because the parents had 50-50 custody, mother could not take A.R. out of Colorado without father's permission, suggesting that mother not taking A.R. over state lines did not discount the caseworker's concerns that mother still posed a flight risk.

¶ 21 Fourth and finally, mother contends that the police incident between her and father did not involve a risk of child endangerment. Mother and father dispute what occurred at the police station. But the caseworker testified that she observed concerning interactions between mother and A.R. after the incident, including mother pressuring A.R. to endorse the story that father

pointed a gun at A.R., despite A.R.'s distress and insistence that she did not see a gun.

¶ 22    And the Department's presentation of evidence to the jury was not limited to the incidents mother now contends were insufficient. Specifically, the jury also heard about referrals made by H.L.'s ABA provider expressing concerns about a decline in H.L.'s hygiene and mother's lack of participation in H.L.'s ABA services. The caseworker testified that each of the children was vulnerable: D.C.L. because of his medical history, H.L. because of her communicative delays related to an autism diagnosis, and A.R. because she reported that she was "easily manipulated" by mother, leading to A.R. cutting off contact with mother.

¶ 23    And mother and the caseworker testified that mother was only participating in virtual family time with the children at the time of the adjudicatory trial. The caseworker testified that after D.C.L. and H.L.'s Alabama case was moved to Colorado, mother stopped coming to Colorado and asked to stop all in-person family time. From the above-described evidence, the jury could reasonably infer that the children were each dependent or neglected under one or

more of the statutory criteria presented.  *See* § 19-3-102(1)(a)-(c).

Accordingly, we will not disturb the jury's verdict.

### III.   Evidentiary Matters

### A.    Unpreserved or Conclusory Contentions

¶ 24    Mother contends that the juvenile court should have conducted an analysis under *People v. Spoto*, 795 P.2d 1314, 1318 (Colo. 1990), before admitting evidence concerning mother's first dependency or neglect action.  But mother did not ask the juvenile court to conduct a *Spoto* analysis.  True, mother objected during cross-examination to the Department's attorney questioning her about her own testimony regarding the first case, on the grounds that information about that case was not disclosed in discovery.  And mother asserted that testimony about the first case would be unfairly prejudicial because her children had not been adjudicated in that case (which was untrue).  But these objections are not sufficient for us to review mother's contention that a *Spoto* analysis should have been conducted.  *People v. Ujaama*, 2012 COA 36, ¶ 37 (An issue is unpreserved for review when, among other things, "an objection or request was made in the trial court, but on grounds different from those raised on appeal or on unspecific grounds

11

which would not have alerted the trial court to the issue of which the defendant now seeks review.") (citation omitted).

¶ 25 Similarly, mother contends that the juvenile court improperly allowed her sister to testify about mother's character for truthfulness. Although mother lodged a foundation-based objection to her sister's testimony, the issue she raises now is fundamentally different from what she raised below. Thus, we will not address it. *Id.*

¶ 26 Finally, mother contends that the juvenile court's evidentiary rulings admitted "highly prejudicial and irrelevant evidence," thus violating her rights to a fair and impartial jury and due process. To the extent mother is attempting to argue a separate due process claim, we do not see that mother raised any such challenge for the juvenile court's determination. Regardless, mother's appellate argument on this basis is conclusory and underdeveloped and, therefore, we decline to address it. *People in Interest of R.J.B.*, 2021 COA 4, ¶ 35 (we won't consider claims which are "merely a bald assertion without argument or development").

## B.     Standard of Review

¶ 27     We review evidentiary rulings, including whether to allow or prohibit witness testimony, for an abuse of discretion.  *People in Interest of M.V.*, 2018 COA 163, ¶ 52, *overruled on other grounds by People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42.  A court abuses its discretion when its ruling is based on an erroneous understanding or application of the law or is manifestly arbitrary, unreasonable, or unfair.  *Id.*

## C.     Hearsay Statements

¶ 28     Mother next contends that the juvenile court erred by permitting the caseworker to testify about statements mother made to the caseworker, and about A.R.'s and D.C.L.'s statements that they did not feel safe with mother.

## 1.     Applicable Law

¶ 29     Colorado Rule of Evidence 801(c) defines hearsay as a statement other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted.  Hearsay is generally not admissible.  CRE 802.  However, exceptions to the hearsay rule include, as relevant here, "[a] statement of the declarant's then existing state of mind,

13

emotion, sensation, or physical condition." CRE 803(3). And prior statements by witnesses subject to cross-examination, along with admissions by party-opponents, are not hearsay under the rule. CRE 801(d)(1)-(2).

## 2. Analysis

¶ 30 Mother contends that the juvenile court improperly admitted her hearsay statements, along with hearsay statements made by D.C.L. and A.R., as the basis of the caseworker's expert opinion. But the record reveals otherwise.

¶ 31 After mother lodged objections to D.C.L.'s and A.R.'s statements, they were admitted under the exceptions for "then existing state of mind, emotion, sensation, or physical condition." *See* CRE 803(3). Mother does not contend that applying this exception to the hearsay rule constituted error. And mother's own statements to the caseworker offered against her during the caseworker's testimony are expressly not hearsay, as they are statements of a party-opponent under CRE 801(d)(2).

¶ 32 We therefore discern no basis for reversal based on the court's admission of alleged hearsay statements.

### D. Opinion on Ultimate Issue

¶ 33    Mother next contends that the juvenile court erred by permitting mother (a lay witness) and the caseworker (a qualified expert) to opine that the children were in an injurious environment.

### 1. Applicable Law

¶ 34    "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." CRE 704. However, a witness may not "tell the jury what result to reach or form conclusions for the jurors that they are competent to reach on their own." *People in Interest of J.R.*, 2021 COA 81, ¶ 21 (citation omitted).

### 2. Analysis

¶ 35    During the adjudicatory trial, the Department questioned mother about the incident at the police station, asking her repeatedly if A.R. was in an injurious environment during that event. Mother objected on the basis that the questioning called for a legal conclusion, and she denied that the child was in an injurious environment. The cross-examination continued, culminating with the Department asking mother whether she

15

"agree[d] that [A.R.] was in an injurious environment through no fault of your own" on that day.

¶ 36    Later, the caseworker opined "that the children . . . were in an injurious environment" and she "thought that they were in danger." And she agreed that she was "asking the jury to make that finding legally at the end of the trial."

¶ 37    Even assuming impropriety in the Department's questioning, we conclude that any error was harmless. Because of our assumption, mother urges us to apply the constitutional harmless error standard of review used in criminal cases. But the supreme court has not expressly determined whether that standard of reversal applies in dependency or neglect cases. *People in Interest of T.M.S.*, 2019 COA 136, ¶¶ 26-27. We need not decide whether constitutional or nonconstitutional harmless error applies because, in this situation, the error would not have affected the outcome under either standard of review.

¶ 38    The jury returned a special verdict finding that each child was in an injurious environment. But the jury also determined that the children were all subjected to mistreatment or abuse and lacked proper parental care because of mother's acts or failures to act,

16

which are independent grounds for adjudicating the children. *S.M-L.*, ¶ 29. Because the jury found two other grounds for adjudicating each of the children dependent or neglected, we cannot say that mother's and the caseworker's opinion testimony regarding injurious environment substantially influenced the outcome of the children's adjudications.

## IV. Jury Instructions

¶ 39 Finally, mother contends that the juvenile court erred by instructing the jury (1) that it could consider the way mother treated other children and (2) "as to what constituted an injurious environment." We discern no basis for reversal.

### A. Standard of Review and Applicable Law

¶ 40 A juvenile court must correctly instruct the jury on applicable law but "retains substantial discretion over the form and style of jury instructions." *People in Interest of M.H-K.*, 2018 COA 178, ¶ 17. We review jury instructions de novo to determine whether, taken as a whole, they accurately informed the jury of the applicable law. *J.G.*, ¶ 33. However, we review a court's decision to give or not give a particular instruction for an abuse of discretion. *Id.* A ruling on jury instructions is an abuse of discretion only

when the ruling results in a misstatement of the law or is manifestly arbitrary, unreasonable, or unfair.  *Id.*

### B.    Treatment of Other Children

¶ 41    The Department proposed an instruction stating that the jury "may consider the way [mother] treated other children in determining whether [H.L.], [D.C.L.], and [A.R.] are dependent or neglected — meaning whether [H.L.], [D.C.L.], and [A.R.] lack proper parental care as the result of [mother]'s acts or failures to act, or whether [H.L.], [D.C.L.], and [A.R.]'s environment is injurious to their welfare."  The pattern instruction on which this instruction was based states that the jury "may consider *[description of respondent]*'s treatment of (another child)(other children) in determining whether the child in this case lacks proper parental care" and advises that the instruction defining "proper parental care" also be given.  CJI-Civ. 41:11 (2025).

¶ 42    Mother objected to this instruction on grounds that the Department intended that the jury consider mother's treatment of her stepchildren, and that doing so had a "high risk of confusing the jury."  Mother now extends that argument by asserting that the case cited by the pattern instruction, *People in Interest of D.L.R.,*

18

638 P.2d 39 (Colo. 1981), limited its application to a parent's treatment of their other natural children. Even if we were persuaded by such a distinction, the court's instruction did not specify which "other children" the jury was to consider when determining whether any of the children in this case were dependent or neglected, and it certainly did not direct the jury to consider the treatment of mother's stepchildren specifically. We therefore conclude that the instruction accurately informed the jury of the applicable law. *J.G.*, ¶ 33.

¶ 43     We therefore discern no basis for reversal.

## C.     Injurious Environment

¶ 44     Mother also contends that the juvenile court improperly instructed the jury on "what constituted an injurious environment." But mother does not provide a record citation to where the court gave such an instruction, and we are unable to locate such an instruction. We therefore decline to address this contention.

## V.     Conclusion

¶ 45     The judgment is affirmed.

JUDGE LIPINSKY and JUDGE MOULTRIE concur.

19