25CA1272 Peo in Interest of KRG 01-15-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1272
El Paso County District Court No. 24JV30785
Honorable Lin Billings Vela, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of K.R.G., a Child,

and Concerning J.S.,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE KUHN
Dunn and Lipinsky, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 15, 2026

---

Kenneth R. Hodges, County Attorney, Amy C. Fitch, Assistant County Attorney, Melanie Gavisk, Assistant County Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1    In this dependency and neglect action, J.S. (father) appeals the judgment entered on a jury verdict adjudicating K.R.G. (the child) dependent or neglected.  We affirm.

## I.    Background

¶ 2    In June 2024, the El Paso County Department of Human Services conducted an assessment because the child was born substance-exposed and mother had abandoned the child shortly after birth.  The intake caseworker met with father and his family while the child was still in the hospital.  The caseworker and the family discussed how father's substance use disorder could impact the child, and the family agreed to contact the Department if father relapsed.  Based on father's and his family's cooperation with the caseworker, the Department closed the assessment, and the child was discharged to father.  Father and the child then lived with father's mother (grandmother).

¶ 3    Approximately six months later, in December 2024, the Department filed a petition in dependency and neglect based on, among other things, father's continued substance use and erratic behavior.

¶ 4    The juvenile court held a jury trial over three days in April 2025. After hearing the evidence, the jury found that the Department had proved that the child was dependent or neglected under section 19-3-102(1)(b)-(e), C.R.S. 2025. Based on the jury's verdict, the court adjudicated the child dependent and neglected.

## II.    Analysis

¶ 5    Father contends that the evidence was insufficient to support the jury's verdict. We disagree.

### A.    Applicable Law and Standard of Review

¶ 6    A child is dependent or neglected if, among other elements, (1) the child "lacks proper parental care through the actions or omissions" of the parent; (2) the child's "environment is injurious to his or her welfare"; (3) the parent "fails or refuses to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for his or her health, guidance, or well-being"; or (4) the child is "homeless, without proper care, or not domiciled with his or her parent . . . through no fault of [the] parent." § 19-3-102(1)(b)-(e).

¶ 7    "An adjudication of dependency or neglect must be based on existing circumstances and relate to the status of the child at the

2

time of adjudication." *People in Interest of A.E.L.*, 181 P.3d 1186, 1192 (Colo. App. 2008). But that doesn't mean that a fact finder must determine whether the child is receiving improper care at the time of the hearing. *See People in Interest of S.X.M.*, 271 P.3d 1124, 1130 (Colo. App. 2011). Rather, an adjudication may be based on past, current, or prospective harm. *People in Interest of G.E.S.*, 2016 COA 183, ¶ 15.

¶ 8 "Whether a child is dependent [or] neglected presents a mixed question of fact and law because it requires application of evidentiary facts to the statutory grounds." *People in Interest of M.M.*, 2017 COA 144, ¶ 17. To establish that a child is dependent or neglected, a department must prove the allegations in the petition by a preponderance of the evidence. § 19-3-505(1), (7)(a), C.R.S. 2025; *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009).

¶ 9 When determining whether the evidence is sufficient to sustain an adjudication, we consider the evidence in the light most favorable to the prevailing party and draw every inference fairly deducible from the evidence in favor of the jury's verdict. *People in Interest of T.T.*, 128 P.3d 328, 331 (Colo. App. 2005). We won't

3

disturb a jury verdict if the evidence supports it, even though reasonable people might arrive at different conclusions based on the same facts. *S.G.L.*, 214 P.3d at 583; *see also Thomas v. People*, 2021 CO 84, ¶ 10 (noting an appellate court may not "invade the jury's province by second-guessing any findings that are supported by the evidence").

### B. Sufficient Evidence Supported the Jury's Determination

¶ 10    Viewing the evidence in the light most favorable to the Department, we conclude that the record contains sufficient evidence to support the jury's determination that the child was in an injurious environment based on father's substance use and his living situation with grandmother. *See S.G.L.*, 214 P.3d at 583.

¶ 11    Regarding substance use, the Department presented evidence establishing that father began his involvement with drugs and alcohol at around age fifteen or sixteen. The Department called father's sister (aunt), who helped care for the child and tried to assist father with sobriety, as a witness. She testified that — because of his substance use disorder — father had lived with grandmother "for a large portion of his adult life" and "at forty-two

4

he [couldn't] even care for himself." Aunt further testified that father didn't own a home or car, couldn't "get a steady job," had "been in and out of prison or jail," and was "just not functioning." Ultimately, aunt opined that father could not safely care for the child or meet the child's needs.

¶ 12    Father admitted that he had a history of substance use and testified that he used methamphetamine "a few" times in December 2024, four months before the adjudicatory trial. The Department introduced the results of four urinalysis tests that confirmed father's use of methamphetamine — as well as other substances — multiple times that December. Although father denied using substances after December, he only completed five urinalysis tests throughout the case, including the four positive tests in December and one test in January 2025. He missed forty-five other tests, including all tests after January.

¶ 13    The Department also presented evidence that, in December 2024, father left a methamphetamine pipe in grandmother's kitchen, leading to a physical altercation between father and grandmother. Aunt testified that, at the time of this incident, father

"had gotten extra high" and "was completely unreasonable" and "over the top."  And the child "was right there, watching it all."

¶ 14　　Regarding the living situation with grandmother, aunt testified that (1) father and grandmother "have a highly toxic relationship"; (2) when they live together "[i]t's a very tense environment"; and (3) father "trashes" grandmother's house.  Aunt further testified that "there really is something very wrong" in father and grandmother's relationship, which would be "emotionally damaging" to the child.

¶ 15　　Despite this testimony, father argues that the child wasn't dependent or neglected because father executed a power of attorney to allow grandmother to care for the child while he sought treatment for "his long-standing substance use disorder."  However, father executed the power of attorney only five days before the jury trial and hadn't yet identified a treatment provider.  Also, father admitted that he could revoke the power of attorney at any time, and grandmother testified that father could undo it "with a stroke of a pen."

¶ 16    Additionally, the jury heard evidence that grandmother wasn't protective of, and was unable to properly care for, the child, according to the following:

- Grandmother testified that she believed the child should be with father, and she didn't know the reason for the power of attorney or whether father had "anything he needs to work on," such as treatment for a substance use disorder, before the child could be returned to him.

- Aunt questioned whether grandmother fully understood father's substance use disorder because grandmother "does not want to live in reality" and "untruthfully . . . defend[s] [father]."

- The intake caseworker testified that grandmother was supposed to report to the Department if father relapsed. But grandmother testified that she didn't report father's continued drug use to the Department.

- The intake caseworker opined that grandmother was more protective of father than of the child.

- The ongoing caseworker questioned whether grandmother could be sufficiently protective of the child.

- Aunt testified that, even if father attended treatment and the power of attorney remained in place, grandmother was "a very difficult person" and could "barely support herself," much less support the child.

¶ 17  Thus, whether the child was living with father or with grandmother, there was sufficient evidence from which the jury could find that the child was in an injurious environment. *See People in Interest of J.G.*, 2016 CO 39, ¶ 26 (concluding that an injurious environment is a situation that is "likely harmful" to the child).

¶ 18  Because we conclude that the evidence was sufficient to support the jury's verdict under section 19-3-102(1)(c), we need not consider whether the child was also dependent or neglected under section 19-3-102(1)(b), (d), or (e). *See People in Interest of S.M-L.*, 2016 COA 173, ¶ 29 ("[S]ection 19-3-102 requires proof of only one condition for an adjudication."), *aff'd on other grounds sub nom.*, *People in Interest of R.S. v. G.S.*, 2018 CO 31.

### III.  Disposition

¶ 19  The judgment is affirmed.

JUDGE DUNN and JUDGE LIPINSKY concur.