COLORADO COURT OF APPEALS                                        2016COA173

Court of Appeals No. 16CA0685
Arapahoe County District Court No. 16JV53
Honorable Theresa M. Slade, Judge

The People of the State of Colorado,

Petitioner-Appellant,

In the Interest of S.M-L., B.M-M., and R.S., Children,

and Concerning G.S.,

Respondent-Appellant,

and D.S.,

Respondent-Appellee.

APPEAL DISMISSED IN PART AND JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Román and Lichtenstein, JJ., concur

Announced November 17, 2016

Ron Carl, County Attorney, Marilee M. McWilliams, Senior County Attorney, Aurora, Colorado, for Petitioner-Appellant

Alison A. Bettenberg, Ranee Sharshel, Guardians Ad Litem

The Law Office of Jeffrey J. Timlin, Jeffrey J. Timlin, Denver, Colorado, for Respondent-Appellant

Oxman & Oxman, P.C., Chad Oxman, Denver, Colorado, for Respondent-Appellee

¶ 1    In this dependency and neglect proceeding, we are asked to decide an issue of first impression: Is a jury's finding that a child is *not* dependent or neglected and the court's denial of a C.R.C.P. 59(e) motion asking for adjudication notwithstanding the jury's verdict a final and appealable order?  We conclude that it is not, because neither C.A.R. 3.4(a) nor the Children's Code provides a right to appeal from such findings.

¶ 2    In this case, the Arapahoe County Department of Human Services (the Department) appeals the denial of its motion for an adjudication notwithstanding the verdict after a jury found that R.S. was not dependent or neglected as to father (D.S.).  Mother (G.S.) appeals the order adjudicating S.M-L., B.M-M., and R.S. dependent and neglected as to her.  We dismiss the Department's appeal and affirm mother's adjudication.

## I.  Background

¶ 3    The Department filed a dependency and neglect petition regarding sixteen-year-old S.M-L., twelve-year-old B.M-M., and eight-year-old R.S. (the children).  The petition named D.S. as R.S.'s biological father and named G.S. as all of the children's mother.  The Department asserted that father had sexually abused his

1

stepdaughter, S.M-L., based on S.M-L.'s credible and consistent reports to it and to a forensic interviewer. Consequently, father was arrested and criminally charged with sexual abuse. The Department stated that father denied the allegations and that mother believed S.M-L. was lying about them. Finally, the Department noted that it had implemented a safety plan that required father to leave the home and to have supervised contact with his stepson, B.M-M., and his daughter, R.S. The children remained at home with mother.

¶ 4     Mother and father denied the allegations in the petition and each requested a trial. Mother requested a bench trial, and father requested a jury trial. The court empaneled a jury for father and heard evidence presented to the jury as the fact finder for mother. During the jury trial, the State presented evidence from S.M-L., as well as the Department's investigator, the Department's caseworker, the forensic interviewer, mother, and a psychologist.

¶ 5     S.M-L. testified that she had told mother about the sexual abuse and that mother thought she was lying. She confirmed that she had told the caseworker and forensic interviewer about the

2

abuse and that her story was true. However, on cross-examination, she recanted and said that nothing inappropriate had occurred.

¶ 6    The Department's investigator, who was qualified as an expert in sexual abuse, child protection, and social work, testified that he had met with S.M-L., and that she had confirmed the sexual abuse. He said S.M-L.'s description to him was consistent with the forensic interview and that she "was very clear about the abuse that happened to her." Thus, nothing caused him concern that S.M-L. had been coached. He also said that mother did not believe S.M-L., which raised child protection concerns as to the remaining children.

¶ 7    The Department's caseworker, who was qualified as an expert in child protection and social work, testified that the Department's main concern was father's sexual abuse of S.M-L. She opined that S.M-L.'s outcry was accurate and that the allegations had not been fabricated. She said mother did not believe the allegations, was not supportive of S.M-L., and had pressured S.M-L. to say that nothing had happened. Finally, the caseworker expressed concerns regarding mother's ability to protect B.M-M. and R.S. given mother's disbelief of S.M-L.'s allegations.

¶ 8     The forensic interviewer, who was qualified as an expert in forensic interviewing and sexual abuse, testified that she had interviewed S.M-L.  She confirmed that S.M-L.'s statements were spontaneous and that her language was age appropriate.  She opined that S.M-L. "was [not] making anything up" because she had "lot[s] of details that she wouldn't have had if someone [had] coached her or told her what to say."  She said S.M-L. seemed sad and upset about not being believed.

¶ 9     Mother testified that her sister (S.M-L.'s maternal aunt) had "put all of these ideas in [S.M-L.'s] head" and that S.M-L. was lying about the allegations.

¶ 10    Finally, a psychologist, who was qualified as an expert in sexual abuse, testified that there are only a small percentage of false outcries in sexual abuse cases.  After reviewing the videotape of the forensic interview, he opined that S.M-L.'s allegations were consistent and spontaneous.

¶ 11    After father presented the testimony of his adult stepchild, the trial court instructed the jury to decide whether R.S. was dependent or neglected with respect to father.  While the jury deliberated about father, mother presented the remainder of her case to the court,

4

including testifying a second time. Thus, the court considered more evidence as to mother than the jury considered as to father.

¶ 12     Before the jury returned its verdict as to father, the trial court made its oral findings regarding mother. The court found that the allegations in the petition had been proven by a preponderance of the evidence based on S.M.-L.'s testimony. It made extensive findings concerning S.M.-L.'s credibility and entered an order adjudicating the children dependent and neglected. Shortly thereafter, the jury returned its verdict finding that R.S. was not dependent or neglected as to father.

¶ 13     The Department moved for an adjudication of father notwithstanding the verdict under C.R.C.P. 59. It argued that the evidence was "overwhelming" and "so strong" that the jury's verdict was not supported by the record. The trial court denied the motion, finding, as a matter of law, there was not insufficient evidence to support the jury's decision. It noted that the jury followed its instructions, paid attention throughout the trial, and asked appropriate questions. *See* C.R.C.P. 59(e)(1). The court also noted that there were genuine issues of material fact and that it could not find the State was entitled to judgment as a matter of law. *See*

C.R.C.P. 59(e)(2). Accordingly, it entered an order dismissing father from the petition.

¶ 14    The Department and mother appeal.

## II.  The Department's Appeal

¶ 15    After the Department filed its notice of appeal, we issued an order to show cause why the appeal should not be dismissed for lack of a final, appealable order, noting that we were unaware of any authority for the proposition that dismissing a parent from a petition based on a jury verdict was a final appealable order. In response, the Department cited *People in Interest of M.A.L.*, 37 Colo. App. 307, 592 P.2d 415 (1976), in which the county appealed a jury verdict not adjudicating the child as dependent or neglected. Based on the Department's response, a motions division of this court allowed the Department's appeal to proceed and for the issue of finality to be considered on the merits. Therefore, we now consider the Department's appeal and conclude that a jury's verdict not adjudicating a party is not a proper basis for requesting an adjudication notwithstanding the verdict under C.R.C.P. 59(e) and that the court's dismissal of a party from a dependency and neglect petition based on a jury's verdict is not a final appealable order

under our appellate rules or the Children's Code. Accordingly, we dismiss the Department's appeal.

### A.  Standard of Review and Applicable Law

¶ 16    When interpreting a rule or statute, our goal is to determine and give effect to the legislature's intent. *See People in Interest of C.L.S.*, 313 P.3d 662, 666 (Colo. App. 2011); *see also People v. Zhuk*, 239 P.3d 437, 438 (Colo. 2010) (rules of procedure are interpreted consistently with principles of statutory construction). We look to the rule or statute's language and give effect to the words and phrases according to their plain and ordinary meanings. *Zhuk*, 239 P.3d at 439; *C.L.S.*, 313 P.3d at 666. Words or phrases should not be added to a statute or rule, and the inclusion of certain terms in a statute or rule implies the exclusion of others. *See People in Interest of J.J.M.*, 2013 COA 159, ¶ 7.

¶ 17    Colorado Appellate Rule 3.4(a), which governs appeals in dependency or neglect cases, provides that a party may appeal (1) orders from dependency or neglect proceedings as permitted by section 19-1-109(2)(b) and (c), C.R.S. 2016 (appeals); (2) orders allocating parental responsibilities under section 19-1-104(6), C.R.S. 2016; (3) final orders entered pursuant to section 19-3-612,

C.R.S. 2016 (reinstatement of the parent-child legal relationship); and (4) final orders of permanent legal custody entered pursuant to sections 19-3-605 and 19-3-702, C.R.S. 2016.

¶ 18    As relevant here, section 19-1-109(2)(c) provides that an order decreeing a child to be neglected or dependent shall be a final and appealable order upon the entry of the disposition.  Nothing in this section refers to the dismissal of a party from the petition based on a jury's verdict finding that a child was *not* dependent or neglected as to that party.

## B.  Analysis

¶ 19    Because neither C.A.R. 3.4(a) nor section 19-1-109(2)(c) contains language permitting an appeal from a "no adjudication" finding, we conclude that the legislature did not intend for such determinations to be final appealable orders.  If the legislature had intended to permit the direct appeal of a fact finder's "no adjudication" decision, it could have done so by express language. *See In re Marriage of Hartley*, 886 P.2d 665, 673 (Colo. 1994) (noting that if the legislature intended the statute to include a certain provision, it would have included it in the statute); *Adams v. Corr. Corp. of Am.*, 187 P.3d 1190, 1193 (Colo. App. 2008) ("[I]t is

presumed that the General Assembly meant what it clearly said."). Indeed, section 19-1-109(2)(b), which addresses orders regarding the termination of parental rights, demonstrates that where the legislature intended to permit the appeal of orders denying termination, it did so. § 19-1-109(2)(b) ("An order terminating or *refusing to terminate* the legal relationship between a parent or parents and one or more of the children of such parent or parents on a petition, or between a child and one or both parents of the child, shall be a final and appealable order.") (emphasis added).

¶ 20 In contrast to the express language in section 19-1-109(2)(b) permitting the appeal of a refusal to terminate parental rights, the legislature chose not to allow the appeal of findings of "no adjudication" when it drafted section 19-1-109(2)(c). And we may not add language to permit such appeals. *See Ruiz v. Hope for Children, Inc.*, 2013 COA 91, ¶ 14; *see also People v. Jaramillo*, 183 P.3d 665, 671 (Colo. App. 2008) (stating that courts must respect the General Assembly's choice of language and cannot add words to a statute).

¶ 21 We are aware that, on at least one occasion, a division of this court entertained the State's appeal of a jury verdict finding that the

children were not dependent or neglected. *M.A.L.*, 37 Colo. App. 307, 592 P.2d 415. However, the issue of finality was neither raised nor addressed on appeal. *See People in Interest of H.R.*, 883 P.2d 619, 621 (Colo. App. 1994). Instead, the division concluded that the jury, as fact finder, was entitled to resolve the conflicting evidence and affirmed the trial court's denial of the People's motion for directed verdict. Moreover, the Children's Code was repealed and reenacted in 1987, well after *M.A.L.* was decided. Ch. 138, 1987 Colo. Sess. Laws 695-823. Hence, we do not view that decision as persuasive precedent on the jurisdictional issue presented here. *See id.*

¶ 22    We further note that after the jury determined that R.S. was not dependent or neglected as to father, the trial court did not have jurisdiction to enter any orders other than dismissal of the petition. *People in Interest of S.T.*, 2015 COA 147, ¶ 19 (finding that the court lacked jurisdiction to enter any orders except dismissal from the petition once it found the allegations in the petition were not proven). Thus, the court had no jurisdiction to rule on the Department's motion for adjudication notwithstanding the verdict. *See id.*

10

¶ 23 Accordingly, because a jury's "no adjudication" verdict is not a proper basis for a motion for adjudication notwithstanding the verdict and thus, is not a final appealable order under C.A.R. 3.4(a) or section 19-1-109(2)(c), we dismiss the Department's appeal.

### III. Mother's Appeal

¶ 24 Mother challenges her adjudication on several grounds. She contends that the petition should be dismissed because (1) the evidence did not support the trial court's findings that R.S. was dependent and neglected; (2) the findings regarding B.M-M. related to events that did not rise to child protection concerns; (3) the court engaged in conjecture and speculation in making its findings concerning S.M-L.; and (4) the court misinterpreted the term "abandoned" in section 19-3-102(1)(a), C.R.S. 2016. We discern no reversible error.

### A. Applicable Law and Standard of Review

¶ 25 A child may be adjudicated dependent or neglected if the State proves, by a preponderance of the evidence, that one or more of the conditions set forth in section 19-3-102 exists. As relevant here, subsections 102(1)(a), (b), (c), and (d) provide that a child is dependent or neglected if:

11

(a) A parent, guardian, or legal custodian has abandoned the child or has subjected him or her to mistreatment or abuse or a parent, guardian, or legal custodian has suffered or allowed another to mistreat or abuse the child without taking lawful means to stop such mistreatment or abuse and prevent it from reoccurring;

(b) The child lacks proper parental care through the actions or omissions of the parent, guardian, or legal custodian;

(c) The child's environment is injurious to his or her welfare; [or]

(d) A parent, guardian, or legal custodian fails or refuses to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for his or her health, guidance, or well-being[.]

¶ 26    Both parents are entitled to a determination as to whether the facts alleged in the petition have been proven. *People in Interest of J.G.*, 2014 COA 182, ¶ 24, *rev'd on other grounds*, 2016 CO 39. The State must present sufficient evidence to persuade the fact finder that the child is dependent or neglected with respect to each parent. *Id.*

¶ 27    A trial court's determinations regarding the sufficiency and weight of the evidence and the credibility of the witnesses, as well as the inferences and conclusions to be drawn therefrom, are within

its discretion. *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982).

¶ 28     In determining whether the evidence is sufficient to sustain an adjudication, an appellate court reviews the record in the light most favorable to the prevailing party, and it draws every fair inference from the evidence in favor of the trial court's decision. *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009). We will not disturb the court's findings and conclusions on review if evidence in the record supports them. *C.A.K.*, 652 P.2d at 613.

## B.  Analysis

¶ 29     After hearing the testimony of several witnesses and considering the documentary evidence presented, the trial court made oral findings and adjudicated the children dependent and neglected under section 19-3-102(1)(a)-(d). We note that the court's minute order shows that S.M-L. was adjudicated pursuant to section 19-3-102(1)(a) while B.M-M. and R.S. were adjudicated pursuant to section 19-3-102(1)(d). Nonetheless, section 19-3-102 requires proof of only one condition for an adjudication. *See* § 19-3-102.

¶ 30     In reaching its conclusions, the trial court found S.M.-L.'s allegations of sexual abuse to be more credible than her recantation.  The court also found that mother had not provided the three children with a supportive environment in which they could address their mental health needs resulting from S.M-L.'s outcry.  It further found that mother had actively attempted to get father back into the home without a protective plan in place.  As to S.M-L.'s younger sister, R.S., the court found that mother had not developed a way to protect her if the allegations were true.

¶ 31     Initially, we note that we are troubled by the admission of plainly inadmissible evidence and the absence of an objection to it.  This inadmissible evidence includes the testimony of various experts who interviewed S.M-L. and testified that they believed her allegations were credible, opined that she had not been coached, and provided statistics regarding the probability of false allegations.  The admission of such evidence undermines the fairness of the proceedings and has long been regarded as improper.  *See People v. Cernazanu,* 2015 COA 122, ¶ 11 (reversible error to allow mother to opine on the credibility of daughter's allegations of sexual abuse); *People v. Wittrein,* 221 P.3d 1076, 1081 (Colo. 2009) ("it is clear that

[witnesses] may not offer their direct opinion on a child victim's truthfulness or their opinion on whether children tend to fabricate sexual abuse allegations"); *People v. Bridges,* 2014 COA 65, ¶ 11 (The jury is not allowed to consider "evidence that a witness was telling the truth on a specific occasion because it is solely the jury's responsibility to determine whether a particular witness's testimony or statement is truthful," and witness may not opine that a child was not coached); *People v. Eppens,* 979 P.2d 14, 17 (Colo. 1999) (improper for witness to opine that child was sincere); *People v. Gaffney,* 769 P.2d 1081, 1088 (Colo. 1989) (improper for witness to testify child was "very believable"); *People v. Oliver,* 745 P.2d 222, 225 (Colo. 1987) (witness may not testify he or she personally believed the child's statements); *People v. Snook,* 745 P.2d 647, 649 (Colo. 1987) (witness may not testify that children tend not to fabricate sexual abuse allegations).  The record reveals, however, that the trial court did not rely on any of this improperly admitted evidence to adjudicate the children as to mother.

¶ 32     The record supports the trial court's findings.  S.M-L. testified that father (her stepfather) had sexually abused her and the court was in the best position to assess S.M.-L.'s credibility when she

15

recanted on cross-examination.  Given the court's detailed findings about the differences in S.M.-L.'s demeanor between direct and cross-examination, we cannot find the court abused its discretion in adjudicating the children dependent or neglected based on its determination that S.M.-L. was abused.

¶ 33    The evidence also showed that mother did not believe the sexual abuse allegations and insisted that S.M-L. was lying. Mother testified that she believed S.M-L. was lying and the forensic interviewer said S.M-L. was upset about not being believed.

¶ 34    The evidence further revealed that because mother did not believe the sexual abuse allegations, the Department was concerned about whether she could protect B.M-M. and R.S.  In fact, mother was not permitted to supervise visits between father and the children because the Department did not believe she would pay attention to father's interactions with B.M-M. and R.S. or that she could identify grooming behaviors.

¶ 35    Finally, the evidence showed that mother attempted to return father to the home by asking to modify the protection order "two or three" times.  Additionally, the Department's investigator said that S.M-L. felt pressured to move out of the home so that father could

visit more often and that the Department was concerned that mother was taking father's side.

¶ 36     Given the facts that S.M-L. alleged sexual abuse by father, that mother disbelieved those allegations, and that mother attempted to return father to the home, we discern no error in the trial court's finding that S.M-L. was dependent and neglected under section 19-3-102.  Similarly, given the Department's concerns about mother's protective capacity based on her disbelief of the sexual abuse allegations, we discern no error in the trial court's finding that B.M-M. and R.S. were dependent and neglected under section 19-3-102.  *See People in Interest of D.L.R.*, 638 P.2d 39, 41-42 (Colo. 1981) (holding that a trial court may adjudicate a child dependent or neglected based on prospective harm).

¶ 37     We are not persuaded by mother's argument that reversal is required because the trial court engaged in conjecture and speculation.  We acknowledge that the court remarked several times about the things that S.M-L. "didn't say" during her testimony.  However, a court's remarks or expressions of opinion made during or at the end of a proceeding are not necessarily formal factual findings prepared as the basis of the judgment.  *See People in*

17

*Interest of O.J.S.*, 844 P.2d 1230, 1232-33 (Colo. App. 1992), *aff'd sub nom. D.A.S. v. People*, 863 P.2d 291 (Colo. 1993). Based on the court's other findings, we do not consider these remarks to be the basis for the judgment.

¶ 38 We also disagree with mother's contention that reversal is required because the trial court interpreted section 19-3-102(1)(a) to include "emotional abandonment." Our review of the court's factual findings does not indicate that it relied on the "abandoned" portion of the statute. Rather, the court found that mother had either subjected S.M-L. to mistreatment or abuse or had allowed another to mistreat or abuse S.M-L. without taking lawful means to stop such mistreatment or abuse or to prevent it from reoccurring.

¶ 39 Accordingly, because the evidence supports the trial court's factual findings, we will not disturb them on appeal.

### IV. Conclusion

¶ 40 The Department's appeal is dismissed, and the order adjudicating mother is affirmed.

JUDGE ROMÁN and JUDGE LICHTENSTEIN concur.