24CA0475 Peo in Interest of LLM 10-03-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0475
Douglas County District Court No. 23JV35
Honorable Randall C. Arp, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of L.L.M., a Child,

and Concerning A.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE MOULTRIE
Welling and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 3, 2024

---

Jeffrey Garcia, County Attorney, Kathryn Cherry, Assistant County Attorney, Castle Rock, Colorado, for Appellee

Nicole Savino, Counsel for Youth, Castle Rock, Colorado

Padilla Law, P.C., Beth Padilla, Durango, Colorado, for Appellant

¶ 1     In this dependency and neglect action, A.M. (mother) appeals the judgment adjudicating L.L.M. (the youth) dependent and neglected.  We affirm.

## I.     Background

¶ 2     The Douglas County Department of Human Services (the Department) received a referral about the then-thirteen-year-old youth based on her disclosure of sexual assault by mother's boyfriend.  The Department created two safety plans with mother.  The Department then filed a petition in dependency and neglect, alleging that mother had allowed the boyfriend into the home in violation of the Department's second safety plan.  Mother denied the allegations in the petition and requested a jury trial.

¶ 3     The juvenile court conducted a jury trial eight months after the Department filed the petition.  At the trial, the Department alleged, and the jury found, that (1) the youth lacked proper parental care as a result of mother's acts or failures to act and (2) the youth's environment was injurious to her welfare.

¶ 4     Based on the jury's verdicts, the juvenile court adjudicated the youth dependent and neglected.  The court then adopted a treatment plan for mother.

## II.    Jury Instructions

¶ 5    Mother contends that the juvenile court erred by declining to give the jury two of her tendered jury instructions.  The first, which the court adopted in part, provided definitions for "injurious environment."  The second was based on the presumption from *Troxel v. Granville*, 530 U.S. 57 (2000).  We discern no error.

### A. Standard of Review

¶ 6    A juvenile court must correctly instruct the jury on the law applicable to a case, and if the juvenile court meets this obligation, it has broad discretion over the style and form of instructions. *People in Interest of J.G.*, 2016 CO 39, ¶ 33.  We review jury instructions de novo to determine whether, taken as a whole, they accurately informed the jury of the applicable law.  *Id.*  However, we review a court's decision to give or not give a particular instruction for an abuse of discretion.  *Id.*  A ruling on jury instructions is an abuse of discretion only when the ruling results in a misstatement of the law or is manifestly arbitrary, unreasonable, or unfair.  *Id.*

### B.    The Injurious Environment Instruction

¶ 7    Mother argued that "injurious environment" should be defined for the jury.  She proposed an instruction stating:

2

> Is there an existence or circumstance that creates an injurious environment for the child's welfare? An injurious environment exists when the child is in a situation that is likely harmful. Injurious means adverse, bad or damaging. Environment means the circumstances or conditions by which one is surrounded. A parent does not have to be at fault to determine an injurious environment.

¶ 8 The Department objected to part of mother's proposed instruction. It argued that the last sentence was duplicative because "[a] parent does not have to be at fault to determine an injurious environment" appeared in a separate instruction that the parties had agreed to give. Mother cited to Merriam-Webster.com for the portions of her proposed instruction that defined "injurious" and "environment." The Department argued that definitions from a nonlegal dictionary should not be included in jury instructions.

¶ 9 But the Department agreed that a portion of mother's proposed instruction — "[a]n injurious environment exists when the child is in a situation that is likely harmful" — was taken from case law and thus was a correct statement of the law. No party objected to that portion, and it was included in the instructions given to the jury.

¶ 10    Mother did not thereafter object to the juvenile court's decision to instruct the jury on the definition of an injurious environment using only a portion of her proposed instruction. Nor does she now contend that the court's instruction misstated the law. *See id.* And because the instruction accurately stated the law, *see People in Interest of J.G.*, ¶ 33, we discern no abuse of discretion.

¶ 11    In any event, the jury returned a verdict that the youth lacked proper parental care, and mother does not challenge this finding. *See People in Interest of S.M-L.*, 2016 COA 173, ¶ 29, *aff'd on other grounds sub nom. People in Interest of R.S. v. G.S.*, 2018 CO 31 (noting that section 19-3-102, C.R.S. 2024, only requires proof of one condition for an adjudication).

### C.    The *Troxel* Instruction

¶ 12    Mother also proposed an instruction stating that the jury "must presume all of [mother's] decisions for the Child are in the Child's best interest unless the petitioner presents evidence to overcome that presumption by a preponderance of the evidence." Mother cited *Troxel* and *M.H-K.* as support for this proposed instruction.

¶ 13     Mother argued that including the instruction was necessary to prevent "burden-shifting onto mother." The Department and youth objected. The youth argued that the instruction would be confusing to the jury. The Department argued that the other instructions amply established that the Department alone carried the burden of proof and mother's instruction was "at best, cumulative, and at wors[t], misleading."

¶ 14     The juvenile court expressed concern that the proposed instruction did not "state[] anything different from what's already being stated in all the other jury instructions taken together." The court found that the proposed instruction was "cumulative [and] certainly confusing" and declined to include it.

¶ 15     To address mother's concern about burden shifting, the juvenile court instructed the jury multiple times that the Department had the burden to prove the allegations. In addition, before deliberation, the jury received instructions (1) defining "burden of proof;" (2) stating "the [Department]" had the burden of proof with respect to all of its bases for asserting the youth was dependent or neglected; and (3) parsing what "the State" did and

5

did not need to prove for the jury to find that the youth was in an injurious environment.

¶ 16    Given this record, mother's proposed instruction was unnecessary to prevent burden-shifting. *People v. Asberry*, 172 P.3d 927, 933 (Colo. App. 2007) ("There is no reversible error if the jury instructions, read as a whole, adequately inform the jury of the law."). Notably, mother does not contend that the totality of the instructions as given failed to properly inform the jury of the Department's burden. Therefore, we discern no abuse of discretion. *See J.G.*, ¶ 33.

### III.    Hearsay Statements

¶ 17    Mother next contends that the juvenile court erred by admitting hearsay testimony from the intake caseworker.

¶ 18    We review a juvenile court's evidentiary rulings for an abuse of discretion. *People in Interest of E.R.*, 2018 COA 58, ¶ 6. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *Id.*

¶ 19    An error in admitting evidence is harmless if it does not affect a substantial right of a party. C.R.C.P. 61; *People in Interest of C.C.*, 2022 COA 81, ¶ 20. An error affects a substantial right only if it

can be said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the trial.  *C.C.*, ¶ 20.

¶ 20     The caseworker testified that the Department received a referral "pretty late at night" and that another caseworker "completed a safety plan with the family" before the testifying caseworker was assigned early the next morning.  The testifying caseworker met with the family and wrote a second safety plan, which the caseworker testified mother did not follow.

¶ 21     Mother now contends that the juvenile court erred by allowing the caseworker to answer the question, "what did th[e first] safety plan entail?"  Mother objected to this question during trial and she asserts now, as she did at trial, that the caseworker's statements about the contents of a safety plan she did not write were hearsay without an exception.

¶ 22     Regardless of whether an exception to hearsay may apply, we discern no error in the court's ruling allowing the caseworker to answer counsel's question about the contents of the first safety plan because the caseworker's answer to the question was cumulative of other properly admitted evidence.  *See People in Interest of M.V.,*

2018 COA 163, ¶ 67 (an erroneous evidentiary ruling is harmless if the inadmissible evidence is cumulative), *abrogated on other grounds by People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42, ¶ 56. The caseworker testified that "the safety plan asked that [the youth] go stay with a friend . . . for the evening, and that her mom would bring her to the Castle Rock Police Department that following morning for a forensic interview." This testimony was substantially similar to testimony that the caseworker had already provided — without objection from mother — that "we received the referral pretty late at night, so we put in a safety plan at the time, having [the youth] go to a family friend for the evening and, that next morning, she would be brought into the police department to have a forensic interview completed."

¶ 23     Additionally, we cannot say that the caseworker's testimony about the contents of the first safety plan substantially influenced the jury's verdict. *See C.C.*, ¶ 20. The caseworker's testimony was that she met the youth and mother at the police department, where the youth gave a forensic interview as required by the first safety plan. Thus, mother's compliance with the first safety plan as described in the caseworker's testimony was unrefuted. Instead, it

was mother's compliance with the second safety plan — which required mother not to allow her boyfriend into the home or allow him to have contact with the youth — which was at issue during the trial. Accordingly, the juvenile court did not abuse its discretion.

## IV. Disposition

¶ 24 We affirm the judgment.

JUDGE WELLING and JUDGE BROWN concur.