25CA1360 Peo in Interest of AHF 01-08-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1360
Mesa County District Court No. 23JV19
Honorable Brian J. Flynn, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.H.F., a Child,

and Concerning M.F.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE PAWAR
Freyre and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 8, 2026

---

Todd M. Starr, County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Appellee

Josie Burt, Guardian Ad Litem

Patrick R. Hensen, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1      In this dependency or neglect proceeding, M.F. (mother) appeals the juvenile court's judgment terminating her parent-child legal relationship with A.H.F. (the child).  We affirm the judgment.

## I.      Background

¶ 2      After mother gave birth to the child in February 2023, urinalysis testing on mother revealed positive results for methamphetamine, amphetamines, and marijuana.  Based on those results, along with the child's subsequent hypoxia, congenital heart failure concerns, and unsuitable living conditions, the Mesa County Department of Human Services filed a petition in dependency or neglect.  A few months later, the court adjudicated the child dependent or neglected and adopted a treatment plan for mother.

¶ 3      In March 2024, about nine months after the court entered the treatment plan, the Department moved to terminate mother's parental rights.  The court held a two-day hearing in June 2025 and issued a written order terminating mother's parental rights in early July 2025.

¶ 4      Mother now appeals the termination judgment, asserting that the juvenile court erred by finding that (1) the Department provided reasonable efforts to rehabilitate her and reunify her with the child;

1

and (2) her conduct or condition was unlikely to improve within a reasonable time.

## II. Termination Criteria and Standard of Review

¶ 5 A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan, or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025. To determine whether a parent is unfit, the juvenile court must consider whether the department of human services made reasonable efforts to rehabilitate the parent and reunite the family. *See* 19-3-100.5(1), 19-3-604(2)(h), C.R.S. 2025; People in Interest of S.N-V., 300 P.3d 911, 915 (Colo. App. 2011). Whether a juvenile court properly terminated parental rights is a mixed question of law and fact because it involves the application of the termination statute to evidentiary facts. People in Interest of L.M., 2018 COA 57M, ¶ 17. We review the court's factual findings for clear error, but we review de novo its legal conclusions based on those facts. People in

Interest of S.R.N.J-S., 2020 COA 12, ¶ 10.  In particular, we review

de novo the juvenile court's ultimate determination of whether the

Department satisfied its reasonable efforts obligation.  *People in*

*Interest of A.S.L.*, 2022 COA 146, ¶ 8.  The credibility of the

witnesses; sufficiency, probative value, and weight of the evidence;

as well as the inferences and conclusions drawn therefrom are

matters within the discretion of the juvenile court.  *People in*

*Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15.

### III.   Reasonable Efforts

¶ 6     Mother asserts that the juvenile court erred by finding that the

Department made reasonable efforts to rehabilitate her and reunify

her with the children.  Specifically, she argues that the Department

failed to provide her with adequate transportation and housing

assistance, and, as a result, she was unable to comply with the

other terms of her treatment plan.  We disagree.[1]

---

[1] The Department and the GAL note that divisions of this court are
split regarding whether raising a lack of reasonable efforts
argument for the first time in closing argument properly preserves
the issue for appeal.  *Compare People in Interest of D.P.*, 160 P.3d
351, 354-55 (Colo. App. 2007) (a parent waives any perceived
deficiency in reasonable efforts not raised before the termination
hearing) *with S.N-V.*, 300 P.3d at 913-18 (an appellate court may
consider a perceived deficiency in reasonable efforts not raised until

A. Applicable Law

¶ 7 A human services department must make reasonable efforts to rehabilitate parents and reunite families following out-of-home placement of abused or neglected children. §§ 19-1-103(114), 19-3-100.5, 19-3-604(2)(h), C.R.S. 2025. The reasonable efforts standard is satisfied when services are provided in accordance with section 19-3-208, C.R.S. 2025. § 19-1-103(114).

¶ 8 To evaluate whether a human services department made reasonable efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan. *S.N-V.*, 300 P.3d at 915. So, whether a department made reasonable efforts "must be measured holistically rather than in isolation with respect to specific treatment plan objectives." *Id.* at ¶ 35.

¶ 9 The parent is ultimately responsible for using the services provided to obtain the assistance needed to comply with the treatment plan. *People in Interest of J.C.R.*, 259 P.3d 1279, 1285

the termination hearing). However, we need not determine whether mother preserved her argument, or was required to, because even assuming she did, we discern no basis for reversal.

4

(Colo. App. 2011). The court may therefore consider a parent's unwillingness to participate in treatment when determining whether a department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

## B.    Transportation

¶ 10    Mother contends that the Department erred by not "offer[ing] the same [transportation] services to [her] that it did to [f]ather." Initially, we note that the record contains conflicting evidence regarding whether the Department was aware of mother's purported transportation difficulties. One caseworker testified that mother requested assistance with transportation. However, another caseworker testified that mother had transportation and did not recall mother reporting transportation as a barrier. Mother herself provided conflicting reports about her transportation needs. At one hearing, she testified that she had a plan for transportation and was able to take the bus to get to family time visits. At the same hearing, however, mother changed course and reported that she lacked transportation and had "hitchhiked" to attend court that day. Nevertheless, the record shows that both mother and father

were offered bus passes, but mother did not appear to take advantage of the offer.

¶ 11   True, mother asked that her substance use testing be moved to a closer location.  But the caseworker testified that no facility was available near mother's home.  Moreover, the caseworker noted that mother was near the testing facility "two to three times a week already anyway" for family time and "it was easy enough to just stop in and, and [sic] get a [test] done."  And while mother asserts on appeal that her lack of transportation prevented her from participating in urinalysis (UA) testing, she testified at the termination hearing that she was "scared" of UA testing because she knew it would be positive.

¶ 12   The record likewise contains conflicting evidence regarding mother's family time assertions.  While mother contends that the "main reason" she missed family time visits was lack of transportation, the caseworker testified that mother had transportation and requested meetings be coordinated around days she had family time visits because she would already be in the area.  Notably, the record does not reflect that mother ever requested her

family time visits be moved to a closer location or that she asked the court to modify her family time treatment plan provisions.

¶ 13 It is for the court to resolve conflicting evidence. *People in Interest of S.M-L.*, 2016 COA 173, ¶ 27. And because the court determined the Department made reasonable efforts, it implicitly credited evidence supporting Department. Because it is supported by the record, we will not disturb it on appeal.

## C. Housing

¶ 14 We are similarly unpersuaded by mother's challenge to the Department's efforts to provide mother with housing. The juvenile court specifically considered the Department's efforts to assist mother with housing and found that adding her to a housing waitlist satisfied the reasonable efforts requirement.

¶ 15 The record supports the juvenile court's findings that the Department met this obligation. The caseworker testified that she helped mother apply for housing and that mother was added to the waitlist. Even still, mother demonstrated that she was able to obtain and maintain her own housing for several months but chose to leave the home because she was "lonely." Furthermore, the Department provided mother with a referral for a life skills worker

that could have helped her access other benefits.  But mother declined because "she didn't feel it was a service that was needed."

¶ 16 We reject mother's argument that a department is required to provide housing or direct financial assistance as part of its reasonable efforts obligation.  Rather, the Children's Code only provides that, if deemed necessary and appropriate by a parent's individual case plan, a department must provide "[i]nformation and referral services to available public and private assistance resources." § 19-3-208(2)(b)(III).

### D. Cumulative Effect

¶ 17 Lastly, we reject mother's argument that the "cumulative effect" of the Department's alleged lack of reasonable efforts with respect to transportation and housing prevented her progress in other aspects of her treatment plan.  As discussed, the juvenile court's findings that the Department made reasonable efforts with respect to transportation and housing are supported by the record.  Accordingly, we will not disturb the court's findings and legal conclusions on reasonable efforts.[2]

---

[2] For the first time on appeal mother asserts that the Department violated her due process rights by failing to provide reasonable

## IV. Additional Time to Become a Fit Parent

¶ 18    Mother next argues that the juvenile court erred by finding that her conduct or condition was unlikely to improve within a reasonable time because she was engaging in inpatient rehabilitation treatment services at the time of the termination hearing. We are not persuaded.

### A. Applicable Law

¶ 19    An unfit parent is one whose conduct or condition renders the parent unable or unwilling to give a child reasonable parental care. *D.P.*, 160 P.3d at 353. Reasonable parental care requires, at a minimum, that the parent provide nurturing and safe parenting adequate to meet the child's physical, emotional, and mental needs and conditions. *People in Interest of A.J.*, 143 P.3d 1143, 1152 (Colo. App. 2006). A juvenile court can also consider a parent's

---

efforts. Because it was not raised before the juvenile court, we decline to address that contention. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 (in dependency and neglect cases, appellate courts do not address issues raised for the first time on appeal); *see also People v. Tallent*, 2021 COA 68, ¶ 11 ("[A]n appellate court has an independent, affirmative duty to determine whether a claim is preserved . . ., regardless of the positions taken by the parties.").

noncompliance with a treatment plan in determining unfitness. *People in Interest of D.P.*, 181 P.3d 403, 408 (Colo. App. 2008).

¶ 20    In determining whether a parent's conduct or condition is likely to change in a reasonable time and whether the parent can therefore become fit in a reasonable time, the juvenile court may consider whether any change has occurred during the proceeding, the parent's social history, and the chronic or long-term nature of the parent's conduct or condition. *People in Interest of D.L.C.*, 70 P.3d 584, 588-89 (Colo. App. 2003). The determination of a reasonable period is fact specific and varies from case to case. *People in Interest of S.Z.S.*, 2022 COA 133, ¶ 25.

¶ 21    When a child is under six years old, as in this case, the juvenile court must also consider the expedited permanency planning (EPP) provisions, which require that the child be placed in a permanent home as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025. In EPP cases, no parent shall be found to be in reasonable compliance with, or have been successful at, a treatment plan when the parent (1) has not attended family time as set forth in the treatment plan, unless good cause is shown for failing to attend, or (2) exhibits the same

problems addressed in the treatment plan without adequate improvement.  § 19-3-604(1)(c)(I).

### B. Analysis

¶ 22 The juvenile court determined that mother remained unfit and that her conduct or condition was unlikely to change within a reasonable period of time.  The court based this determination on, among other things, mother's use of intoxicating controlled substances, *see* § 19-3-604(2)(e), and the termination of mother's parental rights in two prior cases.

¶ 23 The court further noted the child's young age and determined that the child "needs permanency as soon as possible."  The court found that the child "needs stability and waiting a longer period and not giving her the opportunity to be adopted and gain the permanent stability that she needs is unnecessary and would therefore be unreasonable."  The record supports the court's findings.

¶ 24 The caseworker, who testified as an expert in child protection, opined that mother was not fit because she "continued to use illegal substances during this case," was "in and out of incarceration," and "had inconsistent family time with [the child]."  The caseworker

believed that mother would need "a substantial amount of time before [the child's] return home could be considered." While mother reportedly engaged in substance use and mental health treatment early in the case, her participation stopped in October 2023. Ultimately, the Department was not able to verify mother's participation in the program. And throughout the case, mother took only two of 171 required UA tests. As described above, mother admitted that she was "scared" of testing because she knew it would be positive for illicit substances. She further agreed that she struggled with substance use throughout the case. And she was incarcerated during the pendency of the case after her probation was revoked.

¶ 25 With respect to the child's mental and emotional needs, the caseworker opined that the child had been in foster care her entire life and that the child needs "safety and stability, and to have a permanent home." She testified that mother had missed about fifty percent of her family time and that the Department previously had been involved with two of mother's other children. She explained that all of mother's treatment plans were "fairly similar," and yet the same concerns that led to Department involvement remained. She

testified that she believed termination of parental rights was in the child's best interests.

¶ 26    Lastly, the record shows mother had ample time to become fit. The termination hearing was originally set for July 2024, but did not take place until June 2025. In all, mother had nearly two years to engage in substance use treatment and services, yet she did not meaningfully engage in any treatment until just a month before the termination hearing.

¶ 27    Accordingly, we conclude that the juvenile court did not err by declining to give mother more time. *See S.Z.S.*, ¶¶ 24, 28-29 (the court need not give a parent additional time, even where there has been recent progress on the treatment plan.)

## V. Disposition

¶ 28    The judgment is affirmed.

JUDGE FREYRE and JUDGE YUN concur.