25CA1998 Peo in Interest of KS 05-14-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1998
Montrose County District Court No. 24JV30043
Honorable Valerie J. Robison, Judge
Honorable D. Cory Jackson, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of K.S., a Child,

and Concerning P.S.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Schock and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 14, 2026

---

Julie R. Andress, County Attorney, Ryan J. Dunn, Assistant County Attorney, Montrose, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1    In this dependency and neglect proceeding, P.S. (father) appeals the judgment adjudicating K.S. (the child) dependent or neglected.  We affirm.

## I.    Background

¶ 2    In December 2024, the Montrose County Department of Human Services received a referral regarding the then-newborn child based on concerns about the parents' substance use, domestic violence, and unstable housing.  At that time, the child was in the neonatal intensive care unit being treated for medical complications associated with his premature birth.  After an initial investigation, the intake caseworker determined that it wouldn't be safe for the child to be discharged from the hospital to either parent.  Consequently, the Department filed a petition in dependency and neglect.

¶ 3    The juvenile court granted temporary custody of the child to the Department.  When the child was discharged from the hospital, he was placed with kin — first with father's brother and later with a non-relative kin provider.

¶ 4    For several months, the Department attempted to locate and serve father with no success.  Thus, the juvenile court granted the

1

Department's request to serve him by publication. Approximately five months after the case opened, father appeared in court for the first time. He then denied the allegations in the petition and requested an adjudicatory jury trial.

¶ 5 After a three-day trial, the jury rendered a verdict finding that the child's environment was injurious to his welfare. Based on the jury's verdict, the court adjudicated the child dependent or neglected.

## II. Legal Framework

¶ 6 The purpose of an adjudicatory jury trial is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence and whether the status of the child warrants intrusive protective or corrective state intervention into the familial relationship. *People in Interest of G.E.S.*, 2016 COA 183, ¶ 13. A child may be adjudicated dependent or neglected if the government proves that one or more of the conditions set forth in section 19-3-102, C.R.S. 2025, exists. *People in Interest of S.M-L.*, 2016 COA 173, ¶ 25, *aff'd on other grounds sub nom People in Interest of R.S. v. G.S.*, 2018 CO 31. As

relevant here, a child is dependent or neglected if "[t]he child's environment is injurious to his or her welfare." § 19-3-102(1)(c).

¶ 7 Adjudication under section 19-3-102(1)(c) doesn't require proof of parental fault. *People in Interest of J.G.*, 2016 CO 39, ¶ 40. Rather, an adjudication may be entered when a child's environment is injurious, regardless of the parents' actions or failures to act. *Id.*

¶ 8 Moreover, adjudication under section 19-3-102(1)(c) can be based on prospective harm. *People in Interest of S.N.*, 2014 COA 116, ¶¶ 15-16; *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009). To determine whether a child is dependent or neglected based on prospective harm, the fact finder's task is to determine whether the child's environment "will be" injurious to the child if placed in the parent's care. *S.N.*, ¶ 16; *People in Interest of S.X.M.*, 271 P.3d 1124, 1130 (Colo. App. 2011). When a child wasn't in the parent's care at the time of removal, the determination must be based on a prediction of the home environment to which the child might be exposed if placed in the parent's care. *See People in Interest of A.W.*, 2015 COA 144M, ¶ 22. And that prediction may be based on the "parent's past conduct and current circumstances." *S.N.*, ¶ 17.

### III. Evidentiary Issues

¶ 9 Father first contends that the juvenile court erred by admitting irrelevant and unfairly prejudicial evidence at the adjudicatory trial. We aren't persuaded.

#### A. Applicable Law and Standard of Review

¶ 10 To be admissible, evidence must be relevant. CRE 402. Under CRE 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

¶ 11 However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. Unfair prejudice occurs when evidence has a tendency to suggest a decision on an improper basis. *A.W.*, ¶ 25. In weighing whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, the proffered evidence should be given its maximal probative weight and its minimal prejudicial effect. *Alhilo v. Kliem*, 2016 COA 142, ¶ 9.

¶ 12 We review the juvenile court's evidentiary rulings for an abuse of discretion. *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11,

¶ 32.  The court abuses its discretion when it misapplies the law or when its decision is manifestly arbitrary, unreasonable, or unfair. *Id.*

### B.   Analysis

¶ 13   Father argues that that under CRE 401, 402, and 403, the court erroneously admitted the following evidence: (1) testimony from a police officer about a 2023 arrest in which the officer reportedly found methamphetamine and a pipe in father's pocket; (2) testimony and evidence about two drug-related convictions, one from 2005 and the other from 2013; (3) audio from a 911 call that was made by one of father's older children during a recent incident of alleged domestic violence between father and his estranged wife; and (4) testimony about the circumstances related to the recent incident of domestic violence.

### 1.   Testimony About the 2023 Arrest

¶ 14   Father asserts that the juvenile court should have excluded all testimony related to his 2023 arrest because all of the criminal charges related to the arrest were dismissed.  We decline to address the argument because father failed to preserve it.

¶ 15    True, father filed a pretrial motion to exclude the police report related to the 2023 arrest, arguing that the "evidence contained in [the] report [was] highly prejudicial and not relevant given that the criminal charges were dismissed" and that the report contained hearsay.  On the first day of trial, however, the Department stated that it no longer planned to introduce the police report as an exhibit.  Instead, it planned to call the responding officer to testify about "the situation [and] . . . what he observed" on the day of the arrest.  Father's counsel then stated that she would make the "usual objections" to the officer's testimony.  In response, the juvenile court noted that it "obviously" couldn't rule on those objections at that time because it "[didn't] know what [would] come up" during the officer's testimony.  Thus, the court directed father's counsel to "make those objections during the testimony."

¶ 16    Nonetheless, except for one objection regarding lack of foundation, father's counsel didn't object to any of the officer's testimony.  Accordingly, we decline to address father's argument that the police officer's testimony about the 2023 arrest was irrelevant and unfairly prejudicial.  *See* CRE 103(a); *Am. Fam. Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 325 (Colo. 2009) (to properly

preserve an objection to evidence admitted at trial, a timely and specific objection must appear in the trial court record); *see also People in Interest of M.B.*, 2020 COA 13, ¶ 14 (in dependency and neglect cases, appellate courts review only issues presented to and ruled on by the lower court).

### 2. Evidence Related to the 2005 and 2013 Convictions

¶ 17 Next, father argues that the juvenile court should have excluded any evidence of his past drug-related criminal convictions. Specifically, he argues that the convictions were too old to be relevant to the child's status at the time of the trial, and that the age of the convictions also made the evidence unfairly prejudicial. We disagree.

¶ 18 To start, we note that it's unclear whether father preserved this argument. On the first day of trial, as a preliminary matter, father's counsel moved the juvenile court to exclude two of the Department's exhibits — the sentencing orders showing father's 2005 and 2013 convictions — arguing that they were irrelevant and unfairly prejudicial. The court then asked father's counsel to clarify if he was "asking for a ruling on the 2005 and 2013 conviction records" and counsel affirmed that he was requesting the court to

exclude the exhibits. In response, the Department noted that, in addition to the exhibits, it expected to elicit testimony about father's past convictions because the convictions were relevant to his "long history of substance use." Father's counsel replied that she was "going to object to that testimony" as well.

¶ 19    The juvenile court then ruled that it was "not going to foreclose the testimony and evidence presented with respect to" the past convictions. It found that the evidence and testimony was relevant because the jury could consider father's past conduct, specifically his history of substance use, to determine whether prospective harm existed. The court went on to say that it was "concerned" about the two exhibits containing confusing information, noting that they may be admissible "depending on what the evidence is during the trial." The court concluded that it wouldn't "perfunctorily" admit the exhibits but that "preclusion of the convictions" shouldn't occur.

¶ 20    Thereafter, father testified about his past convictions without objection. But when the Department sought to introduce the sentencing reports into evidence as exhibits, father objected based on relevance and unfair prejudice. The court found that the

exhibits were relevant and noted that "a significant amount of testimony" had already been presented about the convictions. But the court ordered the Department to redact the charges that had been dismissed, finding that without the redaction, the exhibits would be unfairly prejudicial and confusing to the jury.

¶ 21 It's unclear whether the court's preliminary ruling that "preclusion of the convictions" shouldn't occur permitted all evidence of father's past convictions or simply denied father's request to preemptively exclude that evidence. At any rate, only after father testified about his past convictions without objection did he object to the sentencing reports being admitted as evidence. By that time, however, the jury had already heard about the convictions.

¶ 22 Thus, even assuming that father preserved his challenges to the evidence about his past convictions by making the preliminary request to exclude it, we disagree that the juvenile court abused its discretion by admitting it. First, as the court found, father's past conduct — specifically, his history of substance use — was relevant to the jury's consideration of prospective harm and whether the child would be in an injurious environment if placed in father's

care.[1]  *See A.W.*, ¶ 22; *S.N.*, ¶¶ 16-18 (a parent's past conduct, "such as drug use," is relevant to prospective harm); *see also People in Interest of D.M.F.D.*, 2021 COA 95, ¶ 24 (a parent's convictions and pending charges may support a determination that a child is dependent and neglected when there is "a link between the convictions and pending charges and the factors identified in section 19-3-102").

¶ 23    Second, the court repeatedly found that evidence showing that father had been convicted of two drug-related charges wasn't unfairly prejudicial.  And while the court didn't elaborate on its prejudice finding, father hasn't developed his appellate argument related to prejudice.  To be sure, although father makes some broad

---

[1] Citing a *People in Interest of D.L.R.*, 638 P.2d 39, 43 (Colo. 1981), father asserts that his past drug-related convictions and substance use weren't relevant to prospective harm because a "prospective harm case is one where the fact finder considers the treatment of one or more children in determining whether the child at issue is dependent or neglected."  Father's argument in this regard is premised on too narrow a reading of *D.L.R.*  While *D.L.R.* certainly holds that a fact finder may consider a parent's past treatment of other children in relation to prospective harm, other cases relying on *D.L.R.* make clear it can *also* consider a parent's other past conduct or current circumstances, such as a parent's history of substance use or domestic violence.  *See People in Interest of S.N.*, 2014 COA 116, ¶ 18 (discussing *D.L.R.* among other cases).

assertions that the evidence was unfairly prejudicial to him, he doesn't explain in any detail how the danger of the alleged prejudice substantially outweighed its probative value. *See* C.A.R. 28(a)(7)(B); *People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (an appellate argument is undeveloped if it's presented without supporting facts or specific argument). And development of this argument is particularly important in light of the juvenile court's findings that the evidence related to father's past substance use was specifically relevant to the question the jury was required to answer — whether the child would be in an injurious environment if placed in father's care. *See Alhilo*, ¶ 9; *see also People v. Rath*, 44 P.3d 1033, 1043 (Colo. 2002) ("Because the balance required by CRE 403 favors admission, a reviewing court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected.").

¶ 24    Accordingly, we discern no reversible error by the juvenile court when it admitted the testimony and evidence related to father's past convictions.

### 3. Audio of the 911 Call

¶ 25 Next, father asserts that the audio of a 911 call, made by his older daughter during a domestic violence incident, was irrelevant and unfairly prejudicial. We aren't persuaded.

¶ 26 Prior to trial, the Department moved the court to find that the 911 call was admissible. Father objected, arguing that the audio was irrelevant because neither mother nor the child were present during the incident that led to the 911 call. He also argued that any probative value of the audio was substantially outweighed by the unfair prejudice of admitting the audio into evidence.[2] In a written order, the court granted the Department's motion to introduce the audio of the 911 call, finding that it was relevant because it was probative of father's home environment, specifically whether the child would be exposed to domestic violence if he was returned to father's care. It further found that the audio wasn't unduly prejudicial.

---

[2] Father also asserted that the audio of the 911 call contained inadmissible hearsay. But father doesn't advance this argument on appeal, so we don't address it.

¶ 27 During trial, father re-asserted his prejudice objection when the Department sought to introduce the audio of the 911 call. After listening to the audio, the juvenile court found that the danger of unfair prejudice didn't outweigh the probative value of the audio, "particularly given the timing of it being January 2025."

¶ 28 We reject father's argument that the juvenile court abused its discretion by admitting the audio of the 911 call. First, we agree with the court's finding that regardless of whether mother or the child were present at the time of the incident, the audio was probative of father's home environment, specifically that there was domestic violence in his home, and that was relevant to jury's consideration of whether the child would be in an injurious environment if returned to father. *See A.W.*, ¶ 22; *S.N.*, ¶ 16. Second, the court implicitly acknowledged some level of prejudice in relation to the 911 call but still found that the probative value of the evidence wasn't substantially outweighed by the danger of that prejudice. And father doesn't develop his argument about prejudice on appeal. Specifically, he doesn't explain in any detail how the prejudicial effect of the 911 call substantially outweighed its probative value, particularly in light of the court's finding that it

13

was probative of the recent conditions of father's home environment. *See* C.A.R. 28(a)(7)(B); *D.B-J.*, 89 P.3d at 531; *Rath*, 44 P.3d at 1043.

¶ 29 Therefore, we discern no abuse of discretion in the court's decision to admit the 911 call into evidence.

#### 4. Testimony About the Domestic Violence Incident

¶ 30 Finally, father argues that the juvenile court abused its discretion by allowing several witnesses to testify about the domestic violence incident in January 2025 — about a month after the petition was filed. He asserts that the testimony was irrelevant because the incident involved his wife and older children, not mother and the child, and because the testimony was unfairly prejudicial, and thus, inadmissible. We aren't persuaded that the juvenile court abused its discretion.

¶ 31 Father filed a pretrial motion to exclude all evidence related to the January 2025 domestic violence incident, arguing that the evidence related to the incident was irrelevant and unfairly prejudicial. The juvenile court denied that motion, finding that "[e]vidence of an incident of domestic violence[,] despite involving [f]ather and a third-party[,] is probative of his fitness to parent and

14

whether the child would be in an injurious environment if placed in his care." The court further rejected father's contention of unfair prejudice, finding that such evidence "does not invite the jury to make findings based on irrelevant or inadmissible grounds" because "[w]hether there is domestic violence in the home is itself the relevant issue."

¶ 32 We discern no abuse of discretion in the court's ruling. Like the 911 call, the evidence related to the January 2025 domestic violence incident was probative of father's home environment. Specifically, evidence that there was domestic violence in his home within a month after the petition was filed was relevant to jury's consideration of whether the child would be in an injurious environment if returned to father. *See A.W.*, ¶ 22; *S.N.*, ¶ 16. And, again like the 911 call, the probative value of that evidence to the question of father's home environment and the risk it may pose to the child isn't dependent on whether mother or the child were present at the time of the incident. Instead, the fact of the domestic violence incident involving father in his home so close in time to the adjudicatory hearing was probative of father's home environment. *See A.W.*, ¶ 22 (a parent's prior acts is relevant to predicting the

15

home environment to which a child might be exposed, particularly when the child hasn't previously been that parent's care); *S.N.*, ¶ 17 (holding that a prospective harm determination "requires a prediction of whether, based on the parent's past conduct and current circumstances, it is likely or expected that the parent will fail to provide proper care for the child in the future").

¶ 33   Accordingly, we discern no abuse of discretion in the court's decision to admit evidence related to the January 2025 domestic violence incident.

## IV.   Sufficiency of the Evidence

¶ 34   Father next contends that the Department failed to present sufficient evidence for the jury to find the child dependent or neglected.  We aren't persuaded.

## A.   Applicable Law

¶ 35   In determining whether the evidence is sufficient to sustain an adjudication, we review the record in the light most favorable to the prevailing party, and we draw every inference fairly deducible from the evidence in favor of the jury's decision.  *See S.G.L.*, 214 P.3d at 583; *People in Interest of T.T.*, 128 P.3d 328, 331 (Colo. App. 2005).  The credibility of the witnesses and the probative effect and weight

16

to be accorded the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the purview of the jury. *S.G.L.*, 214 P.3d at 583. We are bound by a jury's findings, and we won't reverse those findings if the record supports them, even if reasonable people might arrive at different conclusions based on the same evidence. *See S.G.L.*, 214 P.3d at 583; *T.T.*, 128 P.3d at 331.

## B. Analysis

¶ 36 The juvenile court adjudicated the child dependent or neglected pursuant to section 19-3-102(1)(c) because the jury found that the child's environment was injurious to his welfare. The evidence admitted at trial supports the jury's verdict.

¶ 37 The ongoing caseworker, who testified as an expert in child welfare and case management, opined that it wouldn't be safe to return the child to father because the Department had ongoing concerns about father's substance use, the domestic violence in father's home, and his lack of understanding of the child's needs. Moreover, the caseworker opined that she would be "very concerned" about the child's safety if he was returned to father while mother was living in the same home because the Department

17

had significant concerns about mother's substance use and mental health, as well as the ongoing domestic violence and "volatility" between the parents. Ample evidence supported the caseworker's opinions.

¶ 38    First, the Department presented evidence of father's long history of substance use. Father testified that he became addicted to methamphetamine as a teenager and had been convicted of drug-related crimes in 2005 and 2013. Next, a police officer testified that in 2023, during an arrest, he found methamphetamine and a pipe in father's pocket. Further, the intake caseworker testified that shortly after the child was born, father went to the emergency after overdosing on what father reported to be caffeine pills. The intake caseworker was concerned about that incident because the symptoms that father reported were consistent with methamphetamine use. And father never provided medical records showing that he had, in fact, overdosed on caffeine pills, as opposed to an illegal substance. Finally, although father testified that he had been sober for several years, the intake caseworker testified that he wasn't able to confirm father's asserted sobriety because,

despite the caseworker's request for father to take a drug test, father didn't do so.

¶ 39     Second, the Department presented evidence showing a history of domestic violence between father and his intimate partners. The intake caseworker testified that as part of his initial assessment, he learned that there had been past reports of domestic violence between father and mother. The ongoing caseworker testified that mother had disclosed an ongoing pattern of domestic violence between her and father. Specifically, mother told the caseworker that, in the past, father had taken her phone and left her stranded outside of town without food, water, or a way to get help. Although father denied any domestic violence between him and mother, he admitted that at one point, he became upset because mother wanted to spend time with a particular friend, and in response, mother purposely hit father with her car.

¶ 40     Moreover, a police officer testified that in January 2025, he responded to a 911 call reporting domestic violence at the home where father, his estranged wife, and his two older daughters lived. When the officer arrived, he could hear yelling, but by the time he went inside the house, father had fled the scene. Father's wife then

showed the officer numerous threatening text messages from father — for example, father said that he would burn their house down and that his wife would "be with [him] or with no one." After further investigation, the officer filed an arrest warrant for father, and father was charged with stalking, felony menacing, and harassment. At the time of the adjudicatory hearing, those charges were still pending. Although father denied the domestic violence allegations related to that incident, he admitted that there had been at least one other incident in which his daughter called the police because of an argument between him and his wife. Father acknowledged that his daughters were scared and upset during those incidents and admitted that it's "not good for children to be in that type of situation."

¶ 41    Third, the Department presented evidence related to father's lack of understanding of the child's needs. The ongoing caseworker testified that the child had special needs and required a higher level of care than the average infant. She further testified that the child became dysregulated very easily, had problems with swallowing and eating, was very stiff, and was not consistently gaining weight. Indeed, the child's kin provider testified that the child needed

occupational therapy for his stiffness and feeding issues and that he needed his caretaker to do specific stretches and exercises with him every day.

¶ 42     Nonetheless, the ongoing caseworker testified that when she discussed the child's special needs with father, he minimized them, saying that the child "appears to be normal" except for having an issue with grasping.  She also testified that father blamed the child's placement provider for his medical issues instead of trying to learn about them.  Indeed, father testified that even when the child was in the hospital, he "looked like a normal child" and that the child was "doing fine" when he was placed with father's brother and only started having feeding issues when he was placed with his current kin provider.  And father also admitted that he didn't ask the medical providers to help him understand the child's medical needs or reach out to the caseworker to ask about them.

¶ 43     Finally, the Department presented evidence related to its concerns about father's living situation.  Specifically, father testified that he was living with his mother because there was a protection order preventing him from living at his own house (with his wife and two daughters).  He further testified that mother was living in the

home with him.  The ongoing caseworker testified that it wouldn't be safe for the child to live in a home with mother because she hadn't addressed the Department's concerns about her substance use and general stability.

¶ 44     Specifically, despite admitting to using methamphetamine during her pregnancy and after the child was born, mother hadn't provided any drug tests during the case.  Further, mother hadn't engaged in any treatment or services offered by the Department.  And the caseworker from a previous dependency and neglect case involving mother and her other children, testified that when that case closed, mother hadn't mitigated the Department's concerns about her ability to parent.  Even so, father testified that he believed mother was in a position to safely parent the child.  Moreover, as noted above, the ongoing caseworker had concerns about continuing domestic violence between the parents.

¶ 45     In sum, based on the evidence presented at trial, it was reasonable for the jury to infer that the safety concerns related to father's substance use and domestic violence still existed at the time of adjudication, and thus, that it would likely be unsafe to place the child in his care.  *See A.W.*, ¶ 22 (the prediction of

22

whether it's likely that a child will be in an injurious environment if returned to the parent can be based on the parent's past conduct and current circumstances).  It was also reasonable for the jury to infer that, regardless of father's specific conduct, it would likely be unsafe to place the child in father's care because of the ongoing safety concerns about mother and the fact that the parents were living together.  *See J.G.*, ¶ 40 (adjudication under section 19-3-102(1)(c) does not require proof of parental fault).

¶ 46    Based on the foregoing, when viewed in the light most favorable to the Department, the evidence was sufficient to support the jury's finding that the child was dependent or neglected under section 19-3-102(1)(c).  Accordingly, we are bound by the jury's findings and discern no basis to reverse the jury's verdict.  *See S.G.L.*, 214 P.3d at 583; *T.T.*, 128 P.3d at 331.

## V.    Disposition

¶ 47    The judgment is affirmed.

JUDGE SCHOCK and JUDGE LUM concur.